MARY C. ACKERLEY, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF BENJAMIN JOHN ACKER-
LEY, DECEASED, PLAINTIFF-RESPONDENT, v. THE
PENNSYLVANIA RAILROAD COMPANY, A BODY COR-
PORATE, DEFENDANT-APPELLANT.

HELEN TRAUZETTEL, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF HENRY TRAUZETTEL, DE-
CEASED, PLAINTIFF-RESPONDENT, v. THE PENNSYL-
VANIA RAILROAD COMPANY, A BODY CORPORATE,
DEFENDANT-APPELLANT.

Submitted February 13, 1943—Decided May 13, 1943.

For the plaintiffs-respondents, *Albert L. Kushinsky* (*Robert A. Lederer,* of counsel).

For the defendant-appellant, *John A. Hartpence.*

The opinion of the court was delivered by

WELLS, J. These two cases arose out of a collision between a train and an automobile at a public crossing in Ocean County. They were consolidated for trial at the Ocean Circuit and are combined in one record here.

Motions for nonsuits and for directed verdicts in favor of the defendant were denied by the trial judge and the questions involved were submitted to the jury for determination. The jury rendered verdicts in favor of the plaintiffs in both cases, and these appeals are from the judgments entered thereon.

At the conclusion of the plaintiffs' case there was testimony to the effect that at about 8 o'clock in the morning of February 5th, 1942, a Ford truck was being driven in a general southerly direction along Lacey Road, a public highway, in the Township of Manchester, by the decedent, Ackerley, in which the decedent, Trauzettel, was riding as a passenger and the truck approached the track of the defendant-railroad company at a point where the track intersects Lacey Road or Crossing, a public highway near Whitings.

It was snowing very hard. While visibility was good in clear weather yet because of the wind and driving snow it was poor on the day in question, but by the use of a windshield wiper there was little difficulty in seeing in the direction in which one was traveling.

The general area was wooded with scrub oak and pine, except for a strip along the railway right-of-way 100 feet on either side of the track, which is called the fire line.

The train operated by defendant approached the Lacey crossing traveling west, and the truck approached from the north, traveling south. There was a collision at the crossing in which both Ackerley and Trauzettel were killed. At the time of the accident, they were on their way to work, being

employed by the county in road work. There was no evidence that they were engaged in a joint enterprise.

The plaintiffs produced in their behalf one Charles Anderson, a fish peddler, who said that on the morning of the accident he was driving alone in his Dodge truck and as he was just coming off of the Toms River Road on to the Lacey Road he heard three or four blasts of the train whistle, that the last blast was heard by him when he was traveling in a general northerly direction between 20 to 40 feet in Lacey Road at a point indicated by an "X" on *Exhibit P-1,* which point was 2,400 feet south of the railroad crossing. Anderson said that his hearing was good; that he continued to travel in a general northerly direction toward the crossing at the approximate speed of between 15 to 20 miles per hour; that the windows of his truck were down; and that he traveled a distance of some 1,900 feet along Lacey Road to a point marked "O" on *Exhibit P-1* (which took about a minute), without hearing any further blasts of the whistle of the locomotive; said point "O" being between 300 to 400 feet south of the crossing. When he got to the point marked "O," he heard three or four short, sharp blasts of the whistle and within two seconds thereafter he heard a crash and saw the train pass over the crossing on the westerly side of the intersection. He could not say that after he heard the first series of whistles he was listening for further signals. He did not hear the bell ringing at any time. For four years he had traveled north twice a week over this road about the same time in the mornings and was well acquainted with the surroundings. On the day in question, because of the weather and the fact that he was approaching the railroad crossing he was traveling slowly and carefully. After the accident Anderson drove across the track and stopped his truck and walked 70 or 80 feet west of the intersection and found the decedents lying under the demolished truck alongside the track, both dead. The train was about 400 feet down the track. There were fresh skid marks of the tires in the snow on Lacey Road north of the track showing that the truck had skidded with brakes applied from 10 to 12 feet onto the track.

Engineer Longstreet was called as a witness for plaintiffs and testified that the train had made a dead stop at the Keswick Colony Station, about three-quarters of a mile east of Lacey crossing, and that as the train approached the intersection it was traveling about 35 miles an hour.

With the negligence phase of the case in this posture, defendant moved for a nonsuit on the ground that no negligence had been shown as alleged in the complaint.

The plaintiffs rested their right to recover damages against defendant upon the single ground of its failure to comply with the statute *R. S.* 48:12-57, which provides that:

"Every railroad company shall place on each engine a bell weighing not less than thirty pounds which shall be rung continuously in approaching a grade crossing of a highway, beginning at a distance of at least three hundred yards from the crossing and continuing until the engine has crossed such highway, or a steam whistle, which shall be sounded, except in cities, at least three hundred yards from the crossing and at intervals until the engine has crossed the highway. * * *"

There were no gates, bell or other warning devices at the intersection, except the standard crossing sign on each side of the tracks as required by *R. S.* 48:12-58.

Upon the refusal of the trial court to grant the defendant's motion for nonsuits, the defendant produced as witnesses, among others, its engineer, fireman, conductor, baggagemaster and the postmaster at Whitings (one-half mile away), all of whom testified that the whistle had been blown, and two of whom also testified that the bell had been rung, in the manner and at the time prescribed by the statute.

Defendant says that the testimony produced by the plaintiffs as to the failure of defendant to give the statutory signals, or one of them, was purely negative testimony and cannot prevail as against the positive, affirmative testimony produced by the defendant that the whistle had been blown and the bell rung as aforesaid. Defendant contends, therefore, that at the conclusion of the plaintiffs' testimony, there being no competent proof of the non-blowing of the whistle or non-ringing of the bell (which was the sole negligence

upon which the actions were based), the trial court erred in refusing to nonsuit the plaintiffs; and that at the close of the case, the defendant having shown conclusively by positive affirmative testimony, both of railroad and outside witnesses, that the whistle had been blown and the bell rung as required by law, it was likewise error on the part of the trial court to refuse to direct a verdict for the defendant.

A large portion of defendant's brief deals with the duty of the decedents and the degree of care required of them in approaching the crossing in question, to the effect generally that they were under a duty to exercise reasonable care in approaching the crossing and in making proper observations, and otherwise taking proper precautions for their own safety, notwithstanding any alleged failure of the defendant to comply with the statutory requirements as to the ringing of the bell or blowing of the whistle. Defendant claimed that its alleged negligence had not been substantiated, and it was clear, as a matter of law, that the fault, and the proximate cause of the accident, lay not with defendant, but with plaintiffs' respective decedents in failing to exercise reasonable care for their safety as they approached the railroad crossing. Plaintiffs concede that the decedents were under an obligation to exercise reasonable care for their own safety at the time of the accident, but say that all of the arguments raised by defendant *assume* that such care was not exercised by the decedents and *assume* the existence of negligent conduct on the part of each of decedents. We incline to agree with the plaintiffs on this point. We find no proof of negligent conduct or the failure to exercise reasonable care on the part of decedents or either of them sufficient as a matter of law to warrant taking this question from the jury. The mere occurrence of the collision does not indicate *per se* such negligent conduct on their part. There was no testimony as to their conduct until immediately before the collision occurred. The engineer said he first saw the truck on his right approaching the crossing when the engine was 75 feet from the crossing, and he assumed it would stop to let the train pass, but when the truck reached a point about 12 or 15 feet from the track

it suddenly skidded around onto the track in front of the locomotive, and the collision followed almost immediately. Anderson didn't see the truck at all until after the accident. Ackerley and Trauzettel, the occupants of the truck, were the only ones who knew that they did, and they were killed in the accident.

Under the circumstances and conditions here prevailing and in the absence of contrary proof we think the decedents are entitled to the ordinary presumption of care. *Gifford* v. *Pennsylvania Railroad Co.*, 119 *N. J. L.* 397.

Passing, now, to the main question raised, we think that the testimony of the plaintiffs' witness, Anderson, that he didn't hear any bell rung at any time nor any whistle blown from the time he was at "X," 2,400 feet away from the crossing, until he reached "O," 300 or 400 feet from the crossing, fully justified the submission of the question as to the ringing of the bell or the sounding of the whistle to the jury, though the defendant's witnesses (all but one of whom were defendant's employees) testified that the whistle was sounded and two of them that the bell was ringing as directed by the statute.

Defendant cites, among other cases, *Holmes* v. *Pennsylvania Railroad Co.*, 74 *N. J. L.* 469; 66 *Atl. Rep.* 412, in which Chief Justice Gummere, speaking for this court (at *p.* 471), said:

"The credibility of the witnesses who proved that the bell was rung was not impeached by any direct evidence; nor does the case disclose any reason for rejecting their testimony. In the case of *Culhane* v. *New York Central, &c., Railroad Co.*, 60 *N. Y.* 133, 137, it is said that 'as against positive affirmative evidence by credible witnesses to the ringing of the bell, or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it, to authorize the submission of the question to the jury. It must appear that they were looking, watching, or listening for it; that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative. A mere "I did not hear" is entitled to no weight

in the presence of affirmative evidence that the signal was given, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact.' (Citing cases, including *Eissing* v. *Erie Railroad Co.*, 73 *N. J. L.* 343.) 'We think this principle is sound when applied to the testimony of one who, by reason of his surroundings, would be unlikely to notice the giving of the signal, unless his attention was directed to the passing of the train.' "

While Anderson said that he could not say that he listened for signals from the time he heard the first series of whistles at "X" to the time he heard the last series of short, sharp whistles at "O," nevertheless the testimony places him in a position where he could and probably did hear all the signals given. He knew the approximate time this train was accustomed to pass this crossing in the mornings and the jury could find that he was looking and watching, as he intended to, and did, cross that crossing right after the train passed and naturally his attention was directed to the train. As stated before, Anderson was traveling 15 miles an hour from the time he heard the last long blast of the first series of whistles 2,400 feet from the crossing until he heard the three quick blasts of the second and last series of whistles, and the train, according to the engineer, was traveling about 35 miles per hour. Since the train was traveling at least twice as fast as Anderson's car, then it would follow that the train was at least 4,800 feet from the crossing at the time Anderson heard the last long blast of the first series of whistles at a point 2,400 feet from the crossing. Consequently, there was an inference that could be drawn from these facts, that no whistle was blown by the train or bell rung from this point until a couple of seconds before the train arrived at the crossing, where the emergency blasts of the whistle were next heard by Anderson. What has been said about the blowing of the whistle applies with equal force to the ringing of the bell. The engineer said the fireman started to ring the bell when he, the engineer, began to blow the whistle at the whistle post 900 feet away from the crossing; and both of them were

continued until after the crossing had been passed; that is to say, the two were operated simultaneously, the one was tied up with the other. It is worthy of note that the only witnesses of defendant's who heard the bell ringing were the engineer and fireman, both of whom might be regarded as "interested" since their's was the responsibility for giving the signals.

In *Cowell* v. *Pennsylvania Railroad Co.*, 101 *N. J. L.* 507, Chancellor Walker speaking for this court (at *p.* 510) said: "The negative testimony of a witness who simply testified that he did not hear a whistle blown or bell rung is not in conflict with the affirmative testimony of credible witnesses whose testimony that the whistle was blown and the bell rung stands unchallenged." The Chancellor then added a very significant paragraph which may well be applied to the instant case; namely, "The cases of *Eissing* v. *Erie Railroad Co.*, 73 *N. J. L.* 343, and *Holmes* v. *Pennsylvania Railroad Co.*, 74 *Id.* 469, cited in the brief for defendant-appellant, do not apply where the facts (as in this case) are not parallel, and where one in a position to hear, hears nothing. In such posture the question is for the jury. *Tischman* v. *Erie Railroad Co.*, 81 *Id.* 268, 270; *affirmed*, 83 *Id.* 793." We do not think, therefore, that the testimony of Anderson can be said to be merely negative within the decisions of this court.

We are also of the opinion that the question of contributory negligence was for the jury. In the first place contributory negligence is a matter of defense and the plaintiff is not required to prove its absence as a part of his case. No presumption of negligence upon the part of a decedent arises in such a case as the present one from the mere occurrence of an accident. To justify a nonsuit, therefore, the contributory negligence of the decedent must clearly appear conclusively as a fact or by necessary exclusive inference, from the plaintiff's proof. *Danskin* v. *Pennsylvania Railroad Co.*, 79 *N. J. L.* (at *p.* 526) ; 76 *Atl. Rep.* 975. In the second place, *R. S.* 48 :12-83, which is applicable here, provides that in a suit against a railroad to recover damages for injury or death occurring at a crossing such as this, where such injury or

death is alleged to be due to the negligence of the company, the plaintiff shall not be nonsuited on the ground of contributory negligence on the part of the person injured or killed, but it shall be left to the jury to determine whether such person was exercising due and reasonable care under the conditions existing at the crossing at the time of such injury or death.

We have carefully examined the points argued in the brief of counsel of defendant concerning the propriety of the admission of evidence as to the speed of the train, the alleged error in the charge of the court as to the credibility of witnesses and all other matters in dispute raised by defendant and find no merit in any of them. All legal points were fully covered by the court's charge and, considered as a whole, presented the law fairly and clearly to the jury.

We find no error calling for a reversal, and the judgments for the plaintiffs are, therefore, affirmed.

*For affirmance*—THE CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.

*For reversal*—None.