GERTRUDE E. McSTAY, AD'X. AD PROS. AND GENERAL AD'X. OF THE ESTATE OF JAMES McSTAY AND FRANCIS J. McSTAY, JR., PLAINTIFF-RESPONDENT, v. EDWARD J. PRZYCHOCKI, DEFENDANT-APPELLANT.

Argued May 28, 1951—Reargued June 7, 1951—
Decided June 25, 1951.

458

*Mr. Harry Green* argued the cause for the appellant (*Mr. David Green,* attorney).

*Mr. John P. Nugent* argued the cause for the respondent (*Messrs. Nugent and Rollenhagen,* attorneys).

The opinion of the court was delivered by

ACKERSON, J.   This action arose out of a fatal accident which occurred on December 4, 1947, when James McStay, age 12, and his brother Francis J. McStay, Jr., age 10, were killed by an automobile operated by the defendant at a street intersection in the City of Bayonne.   James died the same day and Francis the day after the accident.   They were survived by their father, Francis McStay, age 39; their mother, Gertrude E. McStay, age 35, and two brothers, then 5 and 3 years old respectively, and a sister, age 9 months.   The action was brought in the Hudson County Court, Law Division, by the father, as administrator *ad prosequendum* of his deceased sons, under the so-called "Death Act" (*R. S.* 2:47–1 *et seq.*) and also as general administrator of the estate of Francis who lived until the day following the accident. However, the father died on April 29, 1949, before trial, and the mother was substituted as plaintiff in the same representative capacities.

In the pretrial order defendant admitted liability and the trial was limited to the following issues: "To the pecuniary loss to the mother of decedents and present Administratrix *Ad Prosequendum* and general Administratrix, Gertrude McStay, and the pecuniary loss to the next of kin." The jury returned a verdict of $6,000 as damages for the death of each child, a total of $12,000, and judgment was

entered accordingly. Defendant thereupon moved for a new trial on the grounds the verdict was contrary to the charge of the court, excessive, and arrived at as the result of bias, prejudice and sympathy. The trial court denied the motion and, on defendant's appeal, the Appellate Division of the Superior Court affirmed the judgment, whereupon we granted defendant's petition for certification to the Supreme Court.

It is well to note *in limine* that the pertinent section of the Death Act permits the jury to assess "such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the widow, surviving husband, and next of kin of the deceased." This has been interpreted to mean the "deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased." *Carter v. West Jersey & Seashore R. R. Co.,* 76 *N. J. L.* 602 (*E. & A.* 1908). In applying this rule it was said in *Cooper v. Shore Electric Co.,* 63 *N. J. L.* 558, 567 (*E. & A.* 1899):

"With respect to the damages recoverable in such a suit, they are not such as arise from injury to the feelings, but are awarded in reference to a pecuniary loss, and in estimating damages the jury cannot take into consideration mental suffering or loss of society, but must give compensation for pecuniary injury only. * * * Not that the proof with respect to the personal injury need be such that the amount of such damages may appear with exactness. If the evidence be such as to show a reasonable expectation of pecuniary advantage, the extinction of such an expectation by an act occasioning the death of the party from whom it arises will sustain the action, and it is for the jury to say under all the circumstances, taking into account all the uncertainties and contingencies of the particular case, whether there was such a reasonable and well-founded expectation of pecuniary benefit as could be estimated in money, and so become the subject of damages."

The evidence discloses that James and Francis, Jr., were bright, healthy, normal boys, doing well in school, actively helped with the work in and about the home and assisted in attending to the younger children. James, during the summer of 1947 earned from $3 to $5 per week by delivering newspapers. He had a life expectancy of 53 years and his

brother Francis, 55 years. The life expectancy of their mother was 33 years, but that of the three younger children is not revealed.

Defendant's brief on this appeal sets up four points as grounds for reversal. The first of these is to the effect that the trial court erred in refusing to charge defendant's fourth and fifth requests regarding the measure of damages. However, at the oral argument in this court, defendant's counsel expressly abandoned this point, conceding that there was no error in such refusal.

In his second assignment of error, defendant insists that the trial judge erred in propounding a hypothetical case to the jury in explanation of his refusal to charge the above-mentioned fourth request because, it is claimed, the hypothetical deliverance, following such refusal, amounted to an instruction to the jury that damages were not to be limited to pecuniary considerations. The rejected request was as follows:

"4. In actions of this kind, for the death of a minor, the parent is entitled to the earnings of that child until the child becomes twenty-one years old or is emancipated, that is until the child leaves home and cares for itself; the mother would be entitled to the sum, whatever it might be, that he would earn from the time the boys were able to earn until they were twenty-one years of age; but from that you should deduct the amount of money it would cost the mother during that time to support and clothe and educate them, because you see the mother is entitled to his earnings but she is bound in return to support him, clothe and educate him—such education as the mother might give them, until they become twenty-one years of age. * * *"

■■ This request is set up substantially in the words of that part of the charge which was under consideration in the case of *Maher v. Magnus Company, Inc.*, 1 *N. J. Misc.* 469 (*Sup. Ct.* 1923), affirmed 99 *N. J. L.* 514 (*E. & A.* 1923), and was undoubtedly submitted in that form to the trial judge in the instant case upon the assumption that it had been approved as a complete and all-inclusive statement of the rule of damages under the pertinent section of the

Death Act (*R. S.* 2:47–5) where the death of a minor child is involved. Such is not the case, however, since there the appellate courts were not required and did not pass upon the legal sufficiency of the charge in its entirety, but only upon one phase thereof with which we are not concerned in the instant case. Therefore it is important to notice that the proffered request to charge refers only to the deprivation of the probable earnings of the two boys during minority, which, had they lived, would have enured to the benefit of their mother against which should be charged what it would have cost to rear them. No reference whatever is made to the question of any pecuniary injury which the mother and surviving brothers and sister may have sustained, under the evidence, by reason of the deprivation of a reasonable expectancy of contributions of a pecuniary nature which the deceased boys, had they lived, might have made after reaching their majority, nor the probable loss of direct services, having a money value, which might have been rendered during their minority in and about the home. These are proper elements of damage for consideration by the jury in a case such as this, *Morhart v. North Jersey Street Ry. Co.,* 64 *N. J. L.* 236 (*E. & A.* 1899); *Graham v. Consolidated Traction Co., Ibid., p.* 10, 15 (*Sup. Ct.* 1899); *Carter v. West Jersey & Seashore R. R. Co., supra; Mauthe v. B. & G. Service Station,* 5 *N. J. Misc.* 981 (*Sup. Ct.* 1927); 16 *Am. Jur., Death,* § 182, *p.* 122, and the jury in the case *sub judice* was so instructed in the main charge.

The trial judge regarded this fourth request to charge as too narrow, as indeed it was, and, after referring to the charge in the *Maher* case from which this request was taken, he said "I do not charge that, because I don't think that is an accurate description of the law. I will give you a merely hypothetical case, and we will keep it away from the facts in the instant case, but merely for example." He then supposed the traumatic death of a boy five years of age and pointed out that in the normal course of events that boy would have

gone to school until he was 18 years old and that his mainte-
nance would probably be about $15 per week during that
period, or more than $10,000 to bring up the boy until he
reached 18 and during that period he would probably have
very little, if any, income, and his probable earnings be-
tween the ages of 18 and 21, if off-set against the cost of his
earlier maintenance would leave no damages at all on the
death of a young child "if you want to take the mathematical
process, as that charge does."

■ Defendant contends that this hypothetical case and
the court's remarks with reference thereto completely nulli-
fied the limitation of damages to those of a pecuniary nature
as required by the Death Act. We do not think that this
is so. Obviously, when considered in the light of the main
charge upon the foregoing subject, the court was using this
hypothetical case to illustrate the fact that there were addi-
tional factors to be taken into consideration in measuring
damages under the statute besides the probable net earnings
of the minor children, had they lived. For example the loss
of services, having a pecuniary value, which the boys, had
they lived, might have rendered in and about the home during
their minority, and the deprivation of possible pecuniary
contributions thereafter to their mother, surviving brothers
and sister. These factors are substantial and should not
have been ignored. We therefore conclude that the trial
court did not err in illustrating the situation by the hypo-
thetical case.

■ The third point argued by the defendant is to the
effect that the trial court abused its discretion in denying
his motion for a new trial which was based on the assertion
that the verdicts of $6,000 for the death of each of the two
children were so excessive as to indicate that they were the
result of bias, passion, prejudice or mistake. We have re-
viewed the evidence bearing on the question of damages in
the light of the applicable statute, the existing economic
conditions, and the current trend of judicial thought re-
specting the *quantum* of damages in comparable cases and

have concluded it does not clearly and convincingly appear that the verdicts under review are so high as to indicate that they are the result of bias, passion, prejudice or mistake, and, therefore, the trial court did not err in denying the aforesaid motion. *Rule* 1:2–20 (as amended June 7, 1951).

Finally it is contended that the trial court erred in permitting Mrs. McStay to answer questions eliciting (1) the time of her husband's death and (2) the condition of his health on December 4, 1947 (the time of the accrual of the cause of action), which, defendant argues, had no relevancy to the pending issue of damages under the circumstances of the case.

■■ We find it unnecessary to consider the relevancy of this testimony as a factor in estimating the pecuniary injury to the parties involved. The witness answered the first question by saying that her husband died on April 29, 1949 (pending suit). The court then told the jury that this evidence was admitted "to clear the record * * * because he [Mr. McStay] was the original plaintiff and he has died, and his death is not in any way related to this accident or this case" and the jury was not to be influenced thereby. Accordingly, on plaintiff's motion, and without objection from the defendant, the pleadings were amended at the trial by substituting Mrs. McStay as the party plaintiff in the above-mentioned representative capacities in the place and stead of her deceased husband, and the supporting documents to accomplish that end were thereupon marked in evidence, also without objection. In this connection it is important to notice the record discloses that this witness had previously testified, without objection, that, on December 4, 1947, her family consisted of "five children, my husband and myself." Therefore, under all of the above mentioned circumstances, it certainly was not prejudicial to show that her husband had since died. In answering the second question concerning her husband's health, Mrs. McStay said he was "in good health" on December 4, 1947, when the cause of action accrued. Assuming, for present purposes, that this

was immaterial, obviously it did not, under the circumstances revealed by the record, injuriously affect the substantial rights of the defendant. *Rule* 1 :2–20.

The judgment of the Appellate Division of the Superior Court is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD and ACKERSON—4.

*For reversal*—Justices CASE, OLIPHANT and BURLING—3.