244 F.2d 668
 Dorothy FRASIER, as Administratrix de bonis non of the Goods, Chattels and Credits which were of Leroy Walthour, Deceased, Plaintiff-Appellee.
v.
PUBLIC SERVICE INTERSTATE TRANSPORTATION COMPANY, Defendant-Appellant, and
Michael W. Isel, Defendant.
 No. 118.
 Docket 24244.
 United States Court of Appeals Second Circuit.
 Argued January 10, 1957.
 Decided May 3, 1957.
 
 Philip J. O'Brien, New York City (John G. Coleman and Philip J. O'Brien, Jr., New York City, on the brief), for defendant-appellant.
 Levy & Harten, New York City (Abraham N. Levy and Carl K. Harten, New York City, on the brief), for plaintiff-appellee.
 Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.
 LUMBARD, Circuit Judge.
 
 
 1
 In this death action a jury in the Eastern District of New York awarded $115,000 to intestate's administratrix for the benefit of deceased's wife and children. The appellant raises three questions on appeal which in our view require discussion — first, the adequacy of the court's charge regarding negligence; second, whether the award was so excessive that the district court should have set it aside; and third, the failure of the trial judge to grant a continuance because of the inability of defendant's trial counsel to be present during the court's charge.
 
 
 2
 Leroy Walthour died a few hours after he was injured while driving his 1948 Chevrolet sedan when it collided with defendant's bus on the four lane Pulaski Skyway in Newark, New Jersey, about 10 P.M. on the night of December 22, 1950. As the case was tried, the question of who was at fault turned largely on which vehicle had crossed the double white line marking the middle of the highway just prior to the collision. There was evidence from which the jury could find that the defendant's driver was at fault in crossing the white line at a speed of forty miles per hour when parts of the road were still slippery from a light snowfall earlier in the day.
 
 
 3
 The defendant urges that the court committed reversible error in failing to define negligence in its charge especially as it was possible on the facts for the jury to conclude that the accident occurred through no one's fault because of the slippery road condition.
 
 
 4
 Defense counsel requested no charge on this subject, but defendant now argues that these propositions were so fundamental that it was proper to rest on the assumption that the court would cover this without request. But even after the court had completed its charge, counsel seemed content to rest on the charge of which complaint is now made as no exception was taken to the charge as it was given.[1]
 
 
 5
 Moreover, the jury was well acquainted with the simple issues of this case. The judge's reference to negligence and its bearing on the issue of liability were adequate to the business at hand. Thus, after summarizing the pleadings and referring to allegations that the plaintiff used all due care, and that the accident was due to the "carelessness and negligence of the defendant * * * in failing to keep to the right side of the roadway" and defendant's allegations that the accident arose "wholly by the negligence" of Leroy Walthour, and the defendant was "free from any negligence," the judge went on to pose the questions "Through whose fault did the said accident occur?" and "Was there a failure on the part of the bus-driver to exercise the care that the situation called for?"
 
 
 6
 Thus the jury was clearly and accurately advised that they could not find for the plaintiff unless they found that the accident was due solely to the defendant's failure to exercise a reasonable degree of care. The charge, taken as a whole, was brief, concise, simple and understandable, and sufficiently informed the jury of what they were to find. Nothing more was necessary.
 
 
 7
 The defendant next urges that in measuring damages in this statutory death action the jury is limited by the New Jersey statute to actual pecuniary loss, and that the verdict of $115,000 was excessive. There is no merit to these contentions.
 
 
 8
 The court properly instructed the jury on the measure of damages — that in measuring damages the following factors could be considered: (1) the loss to the widow in the light of the deceased's life expectancy of 40.17 years at the time of the accident, his widow's expectancy of 41.53 years and his earnings which had been $1,800 in 1948, $2,250 in 1949 and $2,538 in 1950, making allowance for the deceased's own needs; (2) the loss to the three minor children, aged 3½, 1½ and 4 months at the time of the accident, of "the care and guidance and advice of a father" during their minority; and (3) funeral expenses.
 
 
 9
 The measure of damages for wrongful death is determined by the law of the place where the fatal injury occurred. 2 Beale, Conflict of Laws, § 412.2. While the New Jersey Statute (Revised Statutes N.J. § 2:47-4, 5*) limits recovery to those pecuniary injuries resulting from death, the New Jersey courts have given "pecuniary injuries" a broader meaning than the one urged by the appellant. They are not to be limited to the loss of earnings but include the loss of a "mother's nurture," the intellectual, moral and physical training and instruction of children. McStay v. Przychocki, 1950, 9 N.J.Super. 365, 370, 74 A.2d 370, 372, affirmed 1951, 7 N.J. 456, 81 A.2d 761; Clark v. Prime, 1940, 12 A.2d 635, 636, 18 N.J.Misc. 226.
 
 
 10
 By the same token the loss of the "care and guidance and advice of a father" is a pecuniary injury to his children during their minority.
 
 
 11
 As to the deceased's earnings, the jury may consider probable prospective earning capacity. Capone v. Norton, 1952, 21 N.J.Super. 6, 90 A.2d 508, 510; Clifford v. McCloskey, 1951, 13 N.J.Super. 96, 80 A.2d 134, 135. Walthour's employer, for whom he had worked from April 1948 until his death, testified he was a good worker. Thus the jury were not limited to the $2,538 per year he earned as a concrete laborer in determining what a 23 year old man would be likely to earn during his expectancy of 40 years.
 
 
 12
 At any rate, it is clear that a total of $115,000 for the pecuniary losses suffered by the young widow and three infant children, whose expectancies all exceeded 40 years, was not excessive.
 
 
 13
 In support of its argument that the verdict was excessive, the appellant called the attention of the district court to the fact that the Appellate Division for the Second Department found excessive a New York Supreme Court jury verdict for $90,000 against this bus company and in favor of the administratrix. 1952, 280 App.Div. 818, 113 N.Y.S.2d 764.
 
 
 14
 Of course the district court is not bound by this decision of the Appellate Division which was at best a tertiary ground for its reversal.[2] Moreover, the record on appeal before the Appellate Division shows that upon the trial in Kings County the jury was not instructed upon, and could not have considered the pecuniary loss to the three minor children of the care, guidance and advice of their father which is allowed by the law of New Jersey as set forth above.
 
 
 15
 We should also observe that some allowance must be made for the change in the value of the dollar, and in the scale of wages, which took place between the date of the state court verdict in May 1951, and May 1956, when the jury returned its verdict in the Eastern District of New York. These factors are relevant to the monetary measure of the loss suffered, and clearly support a somewhat larger verdict in 1956. Therefore while the verdict of the jury was generous, we cannot see that the district court abused its discretion in refusing to set the verdict aside on the ground that it was excessive.
 
 
 16
 The appellant now urges that the court should have directed a mistrial or a continuance in view of the fact that, after the summations had been completed and before the judge charged the jury, defendant's trial counsel was absent by reason of his wife's sudden death the night before.
 
 
 17
 Summations had been completed on Friday, May 18. On Monday, May 21 the record shows only that a Mr. Coleman appeared for the defendant. At the conclusion of the charge, Mr. Coleman stated that there was no exception to the charge, but he did take exception to the failure of the court to charge as asked in the last minute requests which were submitted just prior to the charge.
 
 
 18
 Immediately after the jury was polled, Mr. Coleman moved to set aside the verdict for the usual reasons and "particularly on the ground that the verdict is grossly excessive." Judge Galston denied these motions forthwith.
 
 
 19
 Thereafter a more formal notice of motion for a new trial was duly made and was thereafter amended on May 31. The eight grounds set forth had to do with the alleged excessive verdict, the denial of the requests to charge, and allegations that the verdict was contrary to the law and the evidence and without sufficient support in the evidence. After Judge Galston denied this motion on June 20, defendant's counsel, on June 26, moved for a reconsideration and rehearing of the motion for a new trial on the additional ground that the defendant was not represented by Philip J. O'Brien, its trial counsel, upon the charge of the court to the jury. The accompanying affidavit set forth that trial counsel's wife had died Sunday evening, the day before the court was to charge the jury; that he had been unable to appear and that he had to arrange for his associate, John G. Coleman, to appear before Judge Galston and submit written requests to charge; and that Mr. Coleman was not in a position to make exceptions to the charge.
 
 
 20
 Mr. Coleman's affidavit adds that he advised Judge Galston of the reason for Mr. O'Brien's inability to appear Monday morning, and submitted the requests to charge; that he was present during the charge, stated he took no exception to the court's charge, and that he did except to the court's refusal to charge as requested.
 
 
 21
 From all this it appears that counsel for the defendant was content to have the trial proceed without Mr. O'Brien's presence. In addition, the record shows that not only was there no request for a continuance, but that Judge Galston intimated that he would adjourn the proceedings and that this offer was not accepted. But when counsel abides the event and elects to proceed, neither he nor his client may be heard to complain thereafter when the verdict disappoints their expectations.
 
 
 22
 After all the defendant was represented by some counsel, and it was the duty of that counsel to speak up then and there if there was reason to believe that the client would be prejudiced by continuing in the absence of the trial counsel who had attended up to that time. As a matter of fact, Mr. Coleman was not entirely unfamiliar with the facts of this claim as his name appears on the brief which was submitted for the company in the Appellate Division.
 
 
 23
 But in any event it would be a gross injustice, so far as the wife and children are concerned, to require a retrial of this case because of the death of trial counsel's wife. It is more than six years after Walthour's death and two trials have already been held; it would have been an abuse of discretion on the part of the district court to put them to a third trial because of counsel's failure to ask for a brief continuance which, from all that appeared, did not seem necessary or desirable at the time.
 
 
 24
 We have considered the other grounds advanced in support of the appeal and find them to be without merit.
 
 
 25
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 Exception was taken only to the refusal to charge nine requests as submitted by the defendant. None of these requests had to do with those matters which we discuss in the opinion; the others either are not pressed or raise points so insubstantial as not to merit notice
 
 
 *
 Now N.J.S.A. 2A:31-4, 5
 
 
 [2]
 The primary ground for reversal was that deceased's wife was still a minor when letters of administration were granted to her. The secondary ground was that the verdict was contrary to the weight of the credible evidence introduced at that trial, and that error had been committed in the exclusion of evidence. As to this, two of the five judges dissented. The Appellate Division also reversed a judgment for $30,000 in favor of Thelma Walthour individually