**Karen E. McGRATH, Administratrix ad prosequendum of the Estate of Donald V. McGrath, Deceased,**

**v.**

**ERIE LACKAWANNA RAILROAD COMPANY, Appellant.**

**No. 19402.**

United States Court of Appeals, Third Circuit.

Argued Oct. 8, 1971.

Decided May 11, 1972.

Charles W. Hutchinson, Lamb, Blake, Hutchinson & Dunne, Jersey City, N. J., for appellant.

Peter N. Perretti, Jr., Riker, Danzig, Scherer & Brown, Newark, N. J., for appellee.

Before KALODNER, STALEY and ADAMS, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This case comes to us upon the appeal by defendant below, Erie Lackawanna Railroad Company ("Erie"), from a judgment in the amount of $340,000 in favor of plaintiff-appellee. The action was brought by plaintiff as administratrix of her husband's estate for wrongful death alleged to have been caused by Erie's negligence.

The decedent, Donald V. McGrath, was killed on February 17, 1966, when he was struck by one of Erie's trains after alighting from a coach on another Erie train. He lived in New Jersey and had begun commuting between New York and Erie's Glen Rock Station. He had not taken the train to or from Glen Rock previous to February 14, 1966, three days prior to his death.

On the evening of February 17, 1966, Erie Train No. 1177, consisting of a diesel and two coaches out of Hoboken, arrived at the Glen Rock Station. At this station there are two sets of tracks, running east and west. Erie No. 1177 was traveling on the west-bound track. On arriving at Glen Rock, the engineer went beyond the station platform so that the first coach was stopped with its front end exits giving on to a paved road adjacent to the western end of the station.

The decedent had been riding in the first coach. Apparently, all passengers exited the coach from the front or rear right staircases, except for the decedent who alighted from the head of the coach on the left. After the train had stopped, an Erie freight train passed going towards Hoboken on the other set of tracks. Just before this train went by, a passenger sitting by the window on the left side of the first coach saw a man outside and then saw him struck by the oncoming locomotive. Decedent's body was found between the tracks in front of the rear wheels of the first coach on Erie No. 1177.

On this appeal, Erie contends that the district court erred in admitting into evidence a photograph of decedent's young son; that the district court erred in denying Erie's motion for dismissal on the grounds that there was no evidence to support a verdict of liability; that the district court erred in its instructions to the jury with regard to a railroad's statutory duty as to audible signals; and that the verdict as to damages was excessive and based in large part upon evidence of a speculative nature improperly admitted by the district court.

A photograph of decedent's son, taken a year and one-half prior to the trial when he was 4½ years old, was admitted into evidence over Erie's objection. Erie contends that the admission of the photograph constitutes reversible error because it had no probative value and was intended solely to arouse the emotions and sympathy of the jury. Appellee argues that the photograph was relevant evidence and that since the child could have been personally present in the courtroom throughout the trial but was not, the admission of his photograph did not result in a denial of substantial justice to Erie within the purview of Rule 61 of the Rules of Civil Procedure.

With regard to relevance, appellee argues that under the New Jersey death action statute,[1] a material fact at issue in the calculation of damages is the matter of dependency and further, that in the case of surviving infants, a recover-

1. N.J.S.A. 2A:31-4 and 31-5.

able item is the value of the loss to the infant of the care, nurture and education which he otherwise would have obtained from the deceased parent. Appellee contends that the child's appearance was relevant to the jury's determination of the period of dependency and other factors bearing upon the amount of pecuniary loss.[2]

The admission into evidence of a photograph is largely within the discretion of the trial judge. Barney v. Staten Island Rapid Transit Rwy. Co., 316 F.2d 38 (C.A.3), cert. denied, 375 U.S. 826, 84 S.Ct. 67, 11 L.Ed.2d 58 (1963). While its relevance was concededly somewhat remote, we cannot say that the admission of the child's photograph into evidence in the instant case constituted an abuse of that discretion.[3]

Erie next asserts that there was insufficient evidence adduced as to its liability for decedent's death to have been submitted to the jury or to support a verdict of liability. Erie's argument begins with an analysis of the plaintiff's case which it reduces to two separate theories of liability. The first and main theory is that Erie violated its duty to provide its passenger with a safe place to alight based on the contention that it extended an implied invitation to alight from the left into an area made dangerous by virtue of the train having overshot the station. A second theory is based on the failure of the second train to make audible signals as required by statute.

With regard to the theory of implied invitation, Erie argues that the crucial question was whether or not the passage bar on the left side of the vestibule[4] was, in fact, open prior to the time decedent alighted, thereby extending an implied invitation to alight into the dangerous area. Erie's conductor testified that he had placed the bar across the left exit on leaving the station two stops prior to Glen Rock and did not check its position again. Erie asserts that there was a presumption that the bar was down when the train arrived at Glen Rock and that plaintiff had the duty to rebut the presumption and adduce evidence that the passage bar was open to the decedent. After a review of the relevant testimony on this point, Erie concludes that there was no evidence from which the jury could have properly inferred that the passage bar was open.

After an examination of the record, we are of the view that Erie's argument on this issue has oversimplified the plaintiff's case. We do not agree that the evidence adduced was insufficient to create jury issues with regard to Erie's liability. There was ample evidence to sustain findings that the train had overrun the station platform with the first coach having come to rest across a public road, that no warnings had been given with regard to alighting from the left exit, that passengers had exited from the left on prior occasions,[5] that reasonable precautions were not taken to

2. The contention is made that if a child appeared to be healthy, the jury could reasonably infer that he would live at least until maturity and remain dependent for the entire period, whereas if the child appeared sickly or was obviously stricken by an illness or disease, the jury might project a truncated period of dependency.

3. Since the child could have been present throughout the trial, any error which could arguably have been committed by admitting the photograph was harmless error within the spirit and intent of 28 U.S.C. § 2111.

4. The coach in which decedent was riding was a standard coach with a door at

each end between the coach area and a vestibule with exits to both sides of the coach. There are four steps down on each side of the vestibule. At the top of the stairs leading to each exit is a passage bar which can be put down across the staircase to bar exits. The conductor is to put the bar down to prevent exit on the side opposite the station platform in both the front and rear vestibule of each coach.

5. The brief filed by Erie attacks the testimony on this point. In one respect Erie's objection has been corrected by a court reporter's subsequently discovered mistake. Our examination of the record

assure that the left passage bar was closed upon arrival in Glen Rock, and that Erie's second train, an unscheduled freight, ran through the station on the opposite track without warning. It was, therefore, not error on the part of the district court to allow the case to go to the jury.

With regard to the freight train's alleged failure to sound its bell or horn, Erie argues that the only evidence adduced by plaintiff was negative evidence and therefore entitled to no weight. Erie contends that the rule with regard to such evidence is that a witness who testifies that he did not hear such signals must be shown to have been in a position to hear, and his attention must have been directed to the signals. See, e. g., Ackerley v. Pennsylvania R. R. Co., 130 N.J.L. 292, 32 A.2d 449 (1943). Erie then discusses each witness who testified that no signals were heard and indicates how that testimony is invalidated by the evidentiary rule. We deem it unnecessary to set forth in detail the testimony of each such witness. Each was in a position to hear the bell or horn, and since each testified that he heard nothing, a jury issue was presented.[6] Further, we find no error in the district court's instructions on the statutory duty to give audible warnings.

Finally, Erie contends that the verdict as to damages was in substantial part the result of mistake, partiality or prejudice. The basis for this argument is that testimony was allowed, over objection, that the decedent would have been promoted to a higher salaried job. An expert witness projected the decedent's life earnings based upon the higher salaried position and discounted the total amount at 4%. Erie contends that the promotion was speculative and that the

expert's use of the higher salary figures tended to dignify as fact matters which were in controversy. In addition, Erie argues that the expert failed to establish that 4% was the proper and accepted discount rate according to accepted standards.

The testimony as to the promotion came from a partner in the accounting firm which had employed the decedent. The decedent was a candidate for Senior Accountant in 1966, the year of his death. The witness was permitted to testify that he would have been the partner to make the decision on the promotion and that it was a "100% certainty" that in June of 1966 the decedent would have been promoted. He was also permitted to testify as to the salary of a Senior Accountant. The expert called by plaintiff to testify as to the calculations of pecuniary loss utilized the rate of 4% to reduce the future earnings to present value. He also testified as to what the final figure would be using the rate of 6%.

■■ We do not view the testimony as to the promotion to have been overly speculative. The promotion would have come within four months of his death, and the witness who would have made the decision was adamant that the decedent would have received the promotion. Under New Jersey law, in determining damages in a death action, all reasonable expectations bearing upon pecuniary injury should be taken into account, and the jury must weigh the probabilities. McStay v. Przychocki, 7 N.J. 456, 81 A.2d 761 (1951); Kern v. Kogan, 93 N.J.Super. 459, 226 A.2d 186 (1967).

■ Further, we cannot say that the use of a 4% rate is incorrect as a mat-

---

disloses that Erie's objections to the other testimony on this point is based solely on its own inference and that the testimony is equally capable of supporting an inference favorable to the plaintiff.

6. This is the actual rule announced by the case upon which Erie relies, Ackerley v. Pennsylvania R. R. Co., 130 N.J.L. 292,

32 A.2d 449 (1943). There is also authority for a rule that where the railroad itself creates a situation wherein the audible signals are unlikely to be heard, then it has a further duty to take steps to protect those who might not hear them. See Pangborn v. Central R. R. Co. of New Jersey, 18 N.J. 84, 112 A.2d 705 (1955).

ter of law, especially in light of the fact that figures were presented to the jury using a higher rate as well.

We have carefully considered each of appellant's arguments and find them to be without merit. The judgment of the district court will be affirmed.

ADAMS, Circuit Judge (dissenting).

To say the least, in this case, the evidence tending to establish liability on the part of the railroad is not overwhelming. Indeed, it would be fair to say that the plaintiff's case went to the jury without any excess baggage, perhaps without enough baggage. No direct evidence was introduced to show that the bar on the left front door of the passenger car had been left open so as to invite the decedent to alight from that side of the train, as plaintiff's counsel suggests. On the question of the failure of the operator of the freight train to signal its approach, the engineer testified that he did, in fact, sound his horn and bell, whereas various of the passengers on the commuter train testified only that they did not hear a signal. Because the liability issue was so close and the verdict so large, I cannot agree with the majority's holding that the trial court did not abuse its discretion by admitting into evidence the photograph of decedent's son taken one and a half years prior to the trial.[1]

It is hornbook law to state that evidence to be admissible must be probative, relevant and competent. Although the photograph was competent to depict the appearance of the decedent's son at a time one and one-half years prior to trial, the dispute here centers on the relevance and probative value that may be assigned to the picture.

The only arguable relevance the photograph may have had was with regard to determining the pecuniary loss suffered by the boy's not having the care, nur-

ture and education of his father. Additionally, the majority opinion relies on the necessity of the jury's finding the length of expected dependence on the father by the son based on the appearance and health of the son.

New Jersey decisional law has made clear that the pecuniary loss spoken of in the Wrongful Death Act, N.J.S.A. 2A:31–5, may include compensation for loss of care, nurture, and education. The concept of the loss has been described in the leading New Jersey case of Clark v. Prime, 18 N.J.Misc. 226, 12 A.2d 635, 636 (1940):

> "It is certainly possible, and not only so, but highly probable, that a mother's nurture, instruction and training, *if judiciously administered,* will operate favorably upon the worldly prospects and pecuniary interests of the child. The object of such training and education is not simply to prepare them for another world, but to act well their part in this, and to promote their temporal welfare."
> citing, Tilley v. Hudson River R. Co., 29 N.Y. 252, 86 Am.Dec. 297 (emphasis added).[2]

The emphasis of the above-cited language is clearly on the parent's endeavor to care for and educate the child, not on the ability of the child to put the training to proper use. Thus, while the efforts that would have been expended by a deceased parent in this regard might be relevant to the jury's calculation of damages, the appearance of the child certainly has no bearing whatsoever on the computation. In short, it is irrelevant.

The second ground advanced by the majority, that the jury should see a photograph of the child so that it might determine the length of time the child could be expected to be dependent on its father, similarly has no rational foundation. The majority asserts that if the

---

1. I, of course, disagree with the majority's alternative holding on this point, *supra*, n. 3, that any error committed was harmless within the intent of 28 U.S.C. § 2111.

2. See Frasier v. Public Service Int. Transp. Co., 244 F.2d 668 (2d Cir. 1957); Meehan v. Central R. Co. of N. J., 181 F. Supp. 594, 610–611 (S.D.N.Y.1960).

child appeared healthy, the jury would be justified in finding that the child would survive its period of dependence, and vice versa. This evaluation by the jury of the child's chances of survival to eighteen years of age, his majority, might be reasonable if the child were in the courtroom and the jury could observe his actual physical appearance. Here, however, the photograph was taken one and one-half years prior to the trial, and may have been one among many photographs the plaintiff selected to put the child in the best possible light. Moreover, the loss of dependence to which the photograph is addressed means, in effect, that the father, had he not been killed, would have contributed a certain amount to his child each year until the child reached his majority. The amount to be thus contributed each year is not in issue, but rather the number of years for which such amount is to be calculated. This depends on the prospects of the child surviving his majority. Perhaps the best evidence of such possibility would be the testimony of a physician familiar with the child's health, or testimony by his mother or someone close, who had a similar opportunity to observe him, regarding his health and mental condition. Instead, plaintiff placed before the jury a picture of the child taken eighteen months before the trial, and from this the jury was to determine, based on such picture, whether the child was apt to live to his majority. It is clear that a conclusion based on such reasoning would rely on mere conjecture because of the substantial likelihood that significant physical changes will occur in a child's physical appearance and well-being between the ages of four and a half and six. Thus, the photograph is irrelevant to the issue of length of dependence, and is completely lacking in probative value.

The final basis for permitting the photograph to go to the jury is the majority's rationale that since the child could have been present in the courtroom, any error in admitting the picture was harmless. Common sense demands that such reasoning be rejected. If the child were present, the jury could view its behavior and appearance and make whatever reasonable findings it might, based on these factors. Additionally, the child would be subject to cross-examination concerning his recollection of his health; such is not possible with a photograph. Moreover, the child would in no circumstances be present with the jury during its deliberations.

There was no evidence indicating that the photograph was a randomly chosen item showing the child's normal behavior or appearance. In all probability, the photographer carefully posed the child, and prior to trial, the plaintiff undoubtedly must have made a choice of which picture to submit to the jury—the one no doubt showing the child to best advantage. Moreover, the photograph went out with the jury while it deliberated, and it does not require great imagination to visualize a juror, not sure of his decision on the liability question, being shown the picture and told, "Just think what will happen to this beautiful child if we don't find the defendant liable." The likelihood of such an occurrence is so great that, in my opinion, the error of permitting the photograph to go to the jury could not be considered harmless.[3]

It seems clear that the prejudice engendered by the photograph so outweighed its nonexistent relevance or probative value that the district court abused its broad discretion when it admitted the picture into evidence and permitted it to go out to the jury. Accordingly, because the question of liability was close and the picture so prejudicial, I would reverse the judgment of the district court, and would direct that a new trial be granted not inconsistent with the views expressed herein.

3. It is equally apparent that the prejudice created by the photograph might well have had some bearing on the size of the jury's verdict.