**Dudley v. Feldman**

*David Brian Rodden,* for plaintiff.
*Theodore D. Broom,* for defendant.

HILL, *J.,* June 27, 1996—

## I. FINDINGS OF FACT

(1) Minor plaintiff, aged 12 at the time of the accident, turned his ankle and fell because of a depression in the area of a square metal box housing a gas valve

in front of 2014 St. Alban's Street in Philadelphia on October 21, 1994 at approximately 5:30 p.m.

(2) The property at 2014 St. Alban's Street was owned by defendant David Feldman.

(3) A few years before the accident defendant Feldman personally repaved the sidewalk at 2014 St. Alban's Street with brick.

(4) Plaintiff sustained an avulsion fracture of the fifth metatarsal of the right foot.

(5) The court inspected the entire south side of the 2000 block of St. Alban's Street including the site of the fall following a non-jury trial on June 17, 1996 and June 21, 1996 and examined the condition of the sidewalk.

(6) The depression at 2014 St. Alban's Street was created when one edge of a metal gas valve housing approximately 6" square and abutting the curb sank into the ground. The depression measured approximately 3/4" at one point and 1/2" elsewhere.

(7) At the time of the inspections, there was some dirt in the bottom of the deepest part of the depression. There was no testimony at the trial as to whether there was dirt in the depression at the time of the fall. In fact, exhibits P-2, P-3, P-5, P-6, P-7 and P-8 show significantly more dirt and debris in the depression than when the court inspected the area. This would signify that the depression was less deep when the photos were taken than when the court measured it.

(8) Exhibit P-5 shows a ruler measuring the hole. The photo is not as reliable as a visual inspection because it is possible to see the depression from a lower angle by bending one's head to the ground as the court did to get a more accurate view as compared to the photograph which was taken from a higher position.

(9) The depressed side of the box is immediately adjacent to a strip of concrete curbing which is located behind what appears to be original Belgian block curbing.

(10) The second strip of concrete curbing extends along St. Alban's Street for a considerable distance.

(11) The paving bricks around the three other sides of the gas valve box are intact and not defective in that they would be level with the top of the metal box were it not depressed on the side adjacent to the concrete curbing strip.

(12) Minor plaintiff had played basketball, tag, catch, and football in the general area where the accident took place for many years. Plaintiff had lived with his parents at 2010 St. Alban's Street, two houses away from 2014 St. Alban's Street until one year prior to the accident at which time he moved to Maryland to live with his grandmother and attend school there. On the weekend of the accident, plaintiff was visiting his parents at 2010 St. Alban's Street.

(13) On the day of the accident, plaintiff and three friends, of approximately the same age, were utilizing a portable backboard, net, pole and 4' x 4' base which they placed near the curb in a vacant parking space in front of defendant Feldman's property at 2014 St. Alban's.

(14) Plaintiff and his friends had used the portable basketball unit on St. Alban's Street on numerous occasions prior to the accident.

(15) The four boys were playing "rough house" and/or "2-on-2." "Rough house" was described as all other players uniting against the player with the ball.

(16) The accident occurred when plaintiff jumped to block a lay-up shot by another boy.

(17) Plaintiff alleges that when he came down from the jump, his right foot turned inward into the depression created by the partially sunken gas valve housing on defendant Feldman's sidewalk. As a result, plaintiff sustained the fracture to his fifth metatarsal.

(18) There is no evidence that plaintiff ever looked to see where he would land immediately prior to the accident.

(19) The court finds that plaintiff had knowledge of the deteriorated condition of the curb and adjacent areas in front of his own house and other houses up and down the block.

(20) As can be seen from exhibits P-2, P-3 and P-5, the curbing in front of defendant Feldman's property as well as the property at 2010 St. Alban's belonging to the parents of plaintiff, had been reinforced with what appears to be a second strip of concrete curbing behind the original curbing.

(21) The court's inspection of the accident area revealed that the brick sidewalk in front of 2014 St. Alban's was in excellent condition whereas most of the sidewalks along the block were in bad condition. The general condition of the sidewalks around the accident area can be ascertained from exhibits D-5, D-6 and D-7 which show the sidewalk in front of 2010 St. Alban's Street, the home of plaintiff's parents.

(22) At the trial, the court was informed by counsel that the parties had stipulated to the dismissal of Philadelphia Gas Works as a defendant.

(23) The ambulance report indicates that plaintiff stated he hit his foot on curb.

(24) The court finds that defendant Feldman did not breach a duty of ordinary care to plaintiff and was not negligent.

(25) The court finds that plaintiff who was almost 13 was negligent and that this negligence was a substantial factor in bringing about the accident. Plaintiff was in eighth grade at the time of the accident and had played basketball for seven years. Plaintiff seemed alert and intelligent and the court finds that he appeared to be of at least average maturity for his age. The court does not assign any percentage of causal negligence to plaintiff because the court has found defendant Feldman not negligent.

## II. DISCUSSION

The courts have recognized that "[t]he law does not require that sidewalks shall be as free of defects, imperfections, irregularities, unevennesses (sic), etc., as the floors of buildings." *German v. McKeesport City,* 137 Pa. Super. 41, 48, 8 A.2d 437, 440 (1939). In *German* which involves a 1 1/2" vertical defect in a sidewalk, the Superior Court stated that to impose liability, the defect must be "so large and unusual as to appear dangerous to the ordinary pedestrian and everyday passerby," and cautions against placing liability on common and usual sidewalk imperfections. See *id.* at 48, 8 A.2d at 441. Later cases have clearly restated the underlying principle that "an elevation, a depression or an irregularity on a street or highway may be so trivial that courts, as a matter of law, are bound to hold that there was no negligence in permitting such depression or irregularity to exist." *Bosack v. Pittsburgh Railways Co.,* 410 Pa. 558, 563, 189 A.2d 877, 880 (1963).

In the case at bar, the court inspected the sidewalk on the south side of the 2000 block of St. Alban's Street on June 17, 1996 and on June 21, 1996 and noted that while the partly sunken gas valve box did

create a depression as can be seen from the photographs, the entire sidewalk at 2014 St. Alban's was otherwise in excellent condition. The depression where the 6" metal box adjoined the inner concrete curb measured 3/4" at its deepest point. It is ironic that this accident took place on a near perfect sidewalk because most, if not all, of the sidewalks on the block were badly deteriorated. See for example, the sidewalk in front of plaintiff's parents' home.

The duty to maintain the sidewalk is primarily for the benefit of the ordinary pedestrian. *Bosack, supra* at 563, 189 A.2d at 880; *German, supra* at 48, 8 A.2d at 441. It therefore follows that this duty does not necessarily extend to those who participate in fast-moving activities or rough sports conducted on a sidewalk. This is true even where the sidewalk has a minor imperfection which is in plain view to the user. This court's inspection of the south side of the 2000 block of St. Alban's Street revealed a large number of significant hazards to the ordinary pedestrian. This included more than 20 metal boxes in the sidewalk which were elevated or depressed a greater distance above or below the surrounding sidewalk than the one at issue in this case. In fact this was one of the few boxes with a top on it. Also, there were more than 30 significant cracks which created hazards, many extending several feet in length and many inches in depth. Also, several sections of curbing and sidewalk were totally missing.

The condition of the block is similar in many respects to what was observed by the Superior Court in *German:*

"On a Saturday following the argument of this appeal, the writer of this opinion walked from the Schenley Hotel down Fifth Avenue to the court house on Grant Street, in the City of Pittsburgh, a distance of about two and three-quarter miles, and counted the imper-

fections and inequalities in the sidewalks traversed by him, which were at least as great as that testified to in this case and shown in the photograph in the record, and he counted 500 of them before he got to Grant Street, and then stopped counting. To impose a burden of liability on either municipality or property owner for an imperfection as common and usual as that relied on to create liability in this case would put an intolerable burden on the property owner and the city and encourage carelessness by pedestrians in the use of city streets. There are certain reasonable risks that every person who uses city streets must assume as inconveniences to be set off against the advantages of city life . . . and this case presents one of them." *German, supra* at 50, 8 A.2d at 441. (citations omitted)

Prior appellate decisions have found that sidewalk imperfections greater in depth and overall size than in this case were not the basis of liability as a matter of law. See *Bosack, supra* at 563, 189 A.2d at 880 (discussing adjoining cobblestones with 1 1/2" vertical separation); *Harrison v. Pittsburgh,* 353 Pa. 22, 44 A.2d 273 (1945) (discussing a manhole cover projecting 2" above the sidewalk); *Magennis v. Pittsburgh,* 352 Pa. 147, 150, 32 A.2d 449, 450 (1945) (characterizing a 1 1/2" depression that was 12" x 15" as a break in the paving); *Foster v. West View Borough,* 328 Pa. 368, 195 A. 82 (1937) (discussing a depressed unpaved area adjacent to the sidewalk which was 2' long and 2-4" below the level of the sidewalk); *McGlinn v. Philadelphia,* 322 Pa. 478, 184 A. 747 (1936) (discussing a 1 1/2" vertical separation between abutting curbstones); *Newell v. Pittsburgh,* 279 Pa. 202, 123 A. 768 (1924) (discussing 1 1/2" vertical separation between adjoining flagstones in the street crossing); *Pischke v. Dormont Borough,* 153 Pa. Super. 205, 33 A.2d 480

(1943) (discussing saucer-like depression of 1 1/2" maximum involving a water valve housing); *German, supra.* Other states have similarly held that some defects may be so slight so as to preclude liability as a matter of law. See *e.g., Warner v. Chicago,* 378 N.E.2d 502 (Ill. 1995) (discussing a 1 1/8" vertical separation); *Suffolk v. Carter,* 464 S.E.2d 154 (Va. 1995) (discussing sidewalk defects of up to 1" of vertical separation).

## III. VERDICT

Accordingly the court returns a verdict in favor of defendant Feldman and against plaintiff Maurice Dudley, a minor by his parent and natural guardian Donald Dudley.