### JOHN TEN EYCK v. JOHN RUNK.

An action to recover damages claimed to have been sustained by water being flowed back upon plaintiff's land from the mill-dam of the defendant, does not abate by the death of the defendant after issue joined, but may be continued against his executor.

On case made in the Circuit Court of the county of Somerset for an advisory opinion.

For the plaintiff. *S. B. Ransom.*

For the defendant, *I. N. Dilts.*

The opinion of the court was delivered by

THE CHIEF JUSTICE. This action was brought in the Somerset Circuit Court for damages alleged to have been done to the land of the plaintiff, by water being flowed back upon it from the mill-dam of the defendant. The action was, of course, in case, and after issue joined, the defendant having died, a motion was made to suggest upon the record the names of the executors of the defendant, so that the suit might proceed to judgment against them. On the other side, it was insisted that, by the death of the defendant, the suit abated; and whether such insistment be erroneous or well founded, is the question which has been submitted to this court for its advisory opinion.

By the third section of the act to prevent the abatement of suits, it is provided that if a defendant die after issue

joined and before final judgment, an action shall not abate, provided such action might be originally prosecuted or maintained against the executors or administrators of such defendant. The inquiry in this case therefore is, whether this action was of such a nature, that it could have been originally brought against the personal representatives of Mr. Runk, the defendant.

It is clear that by the rules of the common law no such suit could be maintained. The well-known rule was, that if either party died no action could be supported, either by or against his personal representatives, when the action must have been in form *ex delicto* and the plea not guilty. But the counsel of the plaintiff does not contend that a suit, for the injury in question, could have been properly brought against the executors of the defendant, by force of the general principles of our system of laws, but the claim that such a proceeding can be taken is made solely on the ground of statutory authority. It is said that the second section of the supplement to the act relating to the abatement of suits, passed 17th March, 1855, *Nix. Dig.* 4,* justifies such action. The section thus referred to is in the following words, *viz.:* " Where any testator or intestate shall, in his or her lifetime, have committed any *trespass* to the person or property, real or personal, of any person or persons, such person or persons, his or her executors or administrators, shall have and maintain the same action against the executors or administrators of such testator or intestate as he, she, or they might have had or maintained against such testator or intestate, and shall have the like remedy and process for the damages recovered in such action, as are now had and allowed in other actions against executors or administrators."

In the construction of this section the only difficulty suggested is with regard to the correct meaning of the word "trespass." Was the backing of the water on the plaintiff's land by the dam of the defendant, a trespass within the sense of the term as used in the statute?

It is obvious that in its widest scope the word "trespass"

---

* *Rev., p. 1, § 2.*

signifies every injury to property. Its synonym in law Latin was *transgressio*, a term which, in its comprehensive signification, embraced every infraction of a legal right. In this sense it comprehended not only forcible wrongs, where the damages were direct and immediate, but also acts, the consequences of which made them tortious. Tomlin, in his Law Dictionary, in defining this word, uses this language, *viz.*: "So also non-performance of promises and undertakings is a trespass upon which an action of trespass on the case is grounded; and, in general, any misfeasance or act of one man whereby another is injuriously treated or damnified, is a transgression, or trespass in the largest sense; for which an action will lie." *Tomlin's Law Dic., tit. Trespass.* See also, 5 *Bac. Ab., tit. Trespass.* And for examples of the ancient use of the word in this enlarged sense, see 3 *Reeves' Hist. C. L.* 89. It is obvious, therefore, that in this broad acceptation of the word, the injury which constitutes the foundation of the action in the present case, was a trespass—and being such, it clearly falls within the letter of the statute. But not only this, it is, as it seems to me, just as clearly embraced in its general scope or spirit. This act is highly remedial in its character. Its intent was to relieve against the harsh injustice of the old rule—"*actio personalis moritur cum persona.*" There was certainly nothing in morals, in public policy, or in good sense, to justify the continuance of a rule which grounded a man's right to recover for an injury to his person or estate, inflicted by a tortious act, on the contingency of the party injured surviving to the date of the judgment. The statute, therefore, is to be liberally construed so as to advance the remedy for this imperfection; but to hold that the act is operative, only with regard to torts remediable by the action of trespass, would be, certainly, to leave one-half the evil of the old law unaffected by the remedial provision. It would seem very absurd to so construe the act, that if A injure the horse of B by carelessly driving against him, it is a trespass, and by force of the provision in question, the action will survive against the execu-

tors of A, and at the same time to hold that if the servant of A, in the course of his employment, injure, by the same means, the same horse, the suit will not survive, as the injury is consequential and the action must be in case. In my judgment, to ascribe this intention to the framers of this law would not be warranted either by its phraseology or the general purpose contemplated in its enactment. In my opinion the word "trespass," as used in the section under consideration, must be received as equivalent in meaning to the word "tort"—so that the effect of the provision is to give a right of suit against the personal representatives of a deceased wrong-doer for any injurious act of a suable nature, without reference to the form in which the remedy must be sought.

Nor is this construction unwarranted by precedent. The statute of Edward III., c. 7, *de bonis asportatis in vita testatoris*, recited that in times past executors could not have actions for a trespass done to their testators, as of the goods and chattels of the said testators carried away in their life, and so as such trespasses had remained unpunished, enacted that the executors in such cases should have an action against the trespassers and recover the damages in like manner as the testators would have done if living. This act being a remedial law, was largely expounded; and though it made use of the word "trespasses" only, was extended with a liberal hand to all cases within the meaning and intent of the statute. This we find exemplified in many decisions; as, that an executor could maintain either trespass or trover. *Russel's case*, 5 *Rep.* 27. So an action for a false return. *Williams* v. *Cary*, 4 *Mod.* 403. For an escape. *Berwick* v. *Andrews*, 2 *Ld. Raym.* 973. Debt on a judgment against an executor suggesting a devastavit. 1 *Salk.* 314.[*] And many other actions of a like kind for injuries done to the personal estate of the testator in his lifetime. 1 *Saund.* 216 *C, note d;* 1 *Wms. Ex'rs* 704. These decisions are in accordance with the well settled rule of construction, and seem to me to

---

[*] *Berwick* v. *Andrews.*

fully sustain the view taken of the statutory provision in question in this case.

The Circuit Court will be advised that this action does not abate by the death of the defendant, but should be continued against his executors.

CITED in *Hayden* v. *Vreeland,* 8 *Vroom* 378; *Noice, Adm'x,* v. *Brown,* 10 *Vroom* 571; *Tichenor* v. *Hayes,* 12 *Vroom* 196.