IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1879.

---

### TICHENOR v. HAYES, ADMINISTRATRIX.

1. An action in tort for negligence or deceit will lie against the personal representative of a deceased wrongdoer.
2. An action *ex delicto* was brought against the administratrix of a deceased attorney at law for negligence in the discharge of his duty, and in some of the counts deceit was charged—*held*, the action was sustainable.

Demurrer to *narr*.

The declaration contained six counts, that related to two classes of transactions. The first class of counts was founded on a breach of duty in the defendant's intestate, arising out of an alleged retainer of such intestate, as an attorney at law, by the plaintiff, in regard to certain mortgages about to be purchased by the plaintiff, by means of which his money was lost. The second class alleged that the plaintiff was induced, by the deceitful and fraudulent misrepresentations of such intestate, to invest his money in the purchase of certain mortgages; that

the representations were false, and known to be so; and that the plaintiff, relying on them, made the investments, which proved worthless.

Argued at February Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the plaintiff, *Alward & Parrot.*

For the demurrant, *T. N. McCarter.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit against an administratrix. Some of the counts in the declaration, which is demurred to, are founded on a breach of duty in the defendant's intestate, as an attorney at law, in investigating the title and condition, with respect to encumbrances, of a certain property upon which the plaintiff was about to take a mortgage, and whereby the plaintiff lost the money invested by him. The other counts allege, as the gravamen of the action, certain false and fraudulent representations made by such intestate with respect to certain mortgages, in consequence of which the plaintiff put his money in them, and that such securities proved worthless.

The demurrer that has been put in to this declaration is intended to raise but a single question, which is, whether the causes of action thus stated will survive against the personal representative of the deceased wrongdoer.

The action as to form is in tort. I do not understand, from the brief of the counsel of the defendant, that it is contended that if the suit had been in the mode of an action *ex contractu* for the non-performance of the implied contract that the attorney would exercise due care and skill touching the business of his client, that such action would not have survived. Upon this point the law is settled by numerous decisions. In some of these the distinction, with respect to the capacity to survive, that exists between the forms of *assumpsit* and tort, is sharply

drawn. Such, in this particular, is the aspect of *Knights* v. *Quarles*, 2 *Brod. & Bing.* 102, which was a suit in *assumpsit* by an administrator, growing out of an undertaking by the defendant, who was an attorney, to investigate and see that a title about to be conveyed to the intestate was a good one, the breach being that the defendant failed to do so, and that the intestate, in·consequence, took an insufficient title, to the injury of his personal estate. On these facts, the judicial opinion was that such cause of action survived to the personal representative, such result being reached by the rules of the common law, irrespectively of any statutory modification. It was considered that the whole transaction rested on a contract, and that a right to sue, arising from a breach, passed to the administrator, and, in the course of the opinion read on that occasion, it was observed, by way of illustration, "that if a man contracted for a safe conveyance by a coach, and sustained an injury by a fall, by which his means of improving his personal property were destroyed, and that property in consequence injured, though it was clear he in his lifetime might, at his election, sue the coach proprietor in contract or in tort, it could not be doubted that his executor might sue in *assumpsit* for the coach proprietor's breach of contract."

This same distinction, in this respect, between these two forms of action, is emphasized in several of the more recent decisions of the English courts. One of these is the case of *Bradshaw and wife* v. *Lancashire and Yorkshire Railway Co.*, *L. R.*, 10 *C. P.* 189, which was a suit *ex contractu* by an executrix for injuries inflicted on the testator, in consequence of which, after an interval, he had died, the purpose of the suit being to recover for medical expenses, and the loss that had been occasioned by the inability of the testator to attend to his business. The ground that was expressed for sustaining this action, which was admitted to be a novelty, was that all that was claimed by the plaintiff was compensation for the loss that had fallen on the personal estate, and, in form, the suit was for breach of contract, and the doctrine, that there could be no recovery at common law in such a proceeding, by

reason of the suffering and death of the person injured, was distinctly stated. *Potter* v. *Metropolitan District Railway Co.,* 30 *L. J.* (*N. S.*) 765, is a case of the same complexion. And the old authorities are to the same effect, as will conspicuously appear by a reference to the summary of them appended, by way of a note, to the case of *Wheatley* v. *Lane,* 1 *Saund.* 216, the two decisions from the Law Reports being specially instanced by me, not on account of any novelty in the grounds of judgment, but for the reason that they exemplify, with more than common distinctness, the limits to which an action on a contract will survive. For it will be observed that these two cases, both in form *ex contractu,* exclude from the recoverable damages all such as do not fall under the denomination of losses to the personal estate. This rule of decision accords with the principle adopted by this court in the case of *Hayden* v. *Vreeland,* 8 *Vroom* 372, in which it was held that an action for a breach of a contract of marriage could not be maintained by or against the personal representative of either party to the contract.

Up to this point in my remarks on this subject, my object has been to show that although at common law a certain class of actions *ex contractu* are possessed of the capacity to survive to the personal representative, that nevertheless this transmissible remedy is not a complete one ; the importance of this circumstance will hereafter appear.

As has been already stated, the present action is in tort, in part for fraud, and in part for a breach of the duty of an attorney at law in not exercising due care and skill in the business of his client; and it cannot, therefore, be doubted that, by the mere authority of the common law, the proceeding cannot be vindicated. Consequently, the only debatable question arising in this connection is with respect to the proper construction of sections four and five of the act concerning executors. *Rev., p.* 396.

These provisions are not strange to this court. They were considered and, in one of their aspects, construed in the case of *Ten Eyck* v. *Runk,* 2 *Vroom* 428. That was an action for

Tichenor v. Hayes.

damages caused to the plaintiff's land by water backed by the dam of the defendant, and the point decided was that such action was not abated by the death of the owner of the dam, but that it could be continued against his executor. It was admitted, in that case, that such cause of action would have been extinguished at the common law, by force of the rule *actio personalis moritur cum persona,* and its persistence after the death of the defendant was attributed altogether to the effect of the enactment just referred to. That enactment is in these words, viz.: "Where any testator or intestate shall, in his or her lifetime, have taken or carried away, or converted to his or her use, the goods or chattels of any person or persons, or shall, in his or her lifetime, have committed any trespass to the person or property, real or personal, of any person or persons, such person or persons, his or her executors or administrators, shall have and maintain the same action against the executors or administrators of such testator or intestate as he, she or they might have had or maintained against such testator or intestate."

In the case of Ten Eyck *v.* Runk, all that the court was called upon to decide was whether the term "trespass" in this clause signified those immediate wrongs that are remediable by the action of trespass *vi et armis,* or comprehended also those indirect injuries resulting from a tortious act, the appropriate means of redress for which is an action on the case, and the court put upon the expression this latter and more comprehensive interpretation. It is now urged, in the argument of the counsel of the defendant, that while it may be that the case just referred to was correctly ruled, that the ground of judgment there adopted was too broad, and that, in the language of the brief, "The true construction of the act limits its application to injury to specific property, real or personal, and not to such a wrong as works no injury to any real or personal property of the plaintiff, but causes his estate generally to sustain a loss." But is this discrimination reasonable? If, in the instance of water thrown back on to the property of a person by a dam wrongfully erected on the

land of another, the word " trespass " in this act means
" tort " or " wrong," so as to embrace the consequential in-
jury, why should it not have the same broad sense with
respect to the indirect injury inflicted by a neglect? Is it a
reason, or an assumption, to say that the statutory expression
of trespass to property, real or personal, means damage done
to some particular piece of property, and not an injury to the
property in general ? If it is correct to translate the word
" trespass " in this clause by the word " wrong," it seems im-
possible to resist the conclusion that a wrong to personal
property is done as manifestly, when one's personalty in the
aggregate is injured, as when some particular item of it is
damnified. The fact is, the discrimination, taken at its best,
would be but a vague and shadowy one, for it seldom, if
ever, happens that a loss falls upon a person's general estate,
except by means of an injury to some particular part of it.
Thus, if A should destroy by his carelessness bank notes, the
property of B, to the amount of $1000, under the rule sug-
gested an action would survive; but if B lost these same
bank notes through the deceit of A, an action would not sur-
vive. The idea that the legislature intended to give trans-
missibility to the former of these actions, and not to the
latter, is absolutely not credible. This proposed test of the
applicability of the statute, arising from the specialness of
the wrong done, does not appear to be countenanced by the
statutory language, and it certainly does not commend itself
by its results. It requires the same word, standing in a
clause of a statute, to have a two-fold meaning, being broad-
ened in its application to one set of facts, and narrowed in
view of another set, and occasions an action to survive in one
class of cases, and to non-survive in another, where the loss
suffered in each is, in substance, of the same character, and
where the necessity for redress in the one is equal to that in
the other. The exigency should be pressing indeed that
should lead to the adoption of such a rule.

The fact is, the real question to be solved is whether these
clauses of this act are to be construed strictly, or with the

utmost latitude of interpretation, in view of its being a remedial act. In the case of Ten Eyck *v.* Runk the latter course was pursued, and it seems to me that method was strictly correct. This law was plainly intended to take the place, in an improved and amplified form, of the statute of Edward III., c. 7, *de bonis asportatis in vita testatoris,* and its purpose was to remove the same absurdities that had crept into the law by a technical adherence to the words rather than to the spirit of the old maxim, *actio personalis moritur cum persona.* This substitute, and its ante-type, are obviously *in pari materia.* The statute of Edward applied, according to its letter, only to goods carried away in the lifetime of the testator, but by a most liberal construction it was extended to remedy many other wrongs, some of which are referred to in the opinion in Ten Eyck *v.* Runk, and it would not be consistent with customary rules, I think, to refuse to exercise a like liberality in the interpretation of this substituted act. By ascribing to the term "trespass" the signification of tort, or wrong, and which is one of its meanings, the remedy is made approximately commensurate with the evil to be eradicated, and in this way actions for deceits and neglects will survive, as well as those in which the loss follows immediately from the tortious act. The language of the act is comprehensive enough for this purpose, and it is hardly permissible to impute a lesser design to the legislature, for there is a great incongruity in a plan that imparts the quality of survival to an action for a forcible injury, and which withholds the same quality from an action for a neglect, or deceit. The one class of wrongs is, in general, no more culpable than the other, and the injurious results, in some cases, are identical in each. If a physician should intentionally inflict a wound on his patient, the action, it is clear, would, by force of the statute, survive; and, surely, if the same wound were occasioned by want of skill, or carelessness, the same result should obtain.

And it is with respect to the class of cases illustrated by the example just adduced, that the counsel of the defendant interposes another objection to the rule of construction above

indicated. The point is strongly pressed, and it is this, that in that class of cases in which, at common law, a loss sustained may be considered at the option of the party injured, as the consequence either of a breach of duty or of a breach of contract; it could not have been the intention to bring such class within the operation of this act. The reason assigned for this contention is that the person injured can sue the personal representative of the person inflicting the loss, for the breach of the contract, and consequently there was no necessity for legislative intervention. Thus, it is said, and said with truth, that upon general principles the culpable attorney or physician may be sued either for the breach of the implied contract, which obliges him to the exercise of skill and care, or in tort for a breach of duty with respect to the same particulars; and from this it is argued that as the former action will survive at common law, it is not to be supposed that it was the design uselessly to endow the latter with a similar vitality. But the cases presented in the commencement of these remarks deprive this contention of almost all its cogency, for those cases show that the remedy that survives against the representatives of a deceased promise-breaker, in this class of cases, is one that is most incomplete, for no damages can be recovered in such suit, except such as have directly diminished the estate of the deceased. As an illustration, it appears in these cases that if a personal injury is occasioned by the negligence of a carrier, that in a suit by the administrator of such person injured, in an action *ex contractu*, which is the only one the common law keeps alive after the injured person's death, the only damages recoverable are those that go to the impairment of the estate, and that there can be no compensation claimed for personal suffering. Such a redress is so imperfect that it can raise up no implication against a legislative design to keep alive the concurrent remedy for the tort, which is somewhat adequate, if not absolutely complete.

The above rule of construction which I have indicated should be adopted, receives countenance from the views of the

Tichenor v. Hayes.

English courts, expressed with reference to the correct exposition of the statute of 3 and 4 *Wm. IV.*, c. 42, § 2, an act which, with respect to the point now in question, bears considerable similarity to the clause of the statute now being considered. That act provides that an action may be "maintained against the executors or administrators of any person deceased for any *wrong* committed by him in his lifetime to another in respect to his property, real or personal, so as such injury shall have been committed within six calendar months before such person's death," &c. The important inquiry in the present connection is, what interpretation was put upon the expression "wrong" with respect to property, real or personal.

This provision was considered in its bearing upon the case of *Morgan* v. *Ravey*, 6 *Hurl. & Nor.* 265, which was an action in *assumpsit* against the executors of an inn-keeper, for breach of his implied contract to keep safely the goods of a guest. The question mooted was whether the law would imply a contract under the circumstances, but the court said : " It is not however necessary to determine this if the plaintiff elects to amend, which he may do, and we think successfully ; because it seems to us, notwithstanding the ingenious argument of Mr. Phinn, that if the claim against the defendant is for a tort, it is for a 'wrong committed' within the meaning of the 3 and 4 *Wm. IV.*, c. 42, § 2." The counsel of the defendant, in his brief, appears to consider this also a case of " direct injury to specific property," but I am not able to draw any sensible line of discrimination between the consequential loss of goods arising from a neglect, and the consequential loss of a sum of money by the same means. The decision seems to me to be much in point, and is entitled to much weight.

The same statute entered somewhat into the consideration of the case of *Powell* v. *Rees*, 7 *Ad. & El.* 426, and the general tendency of this decision is in the same direction with the rulings in the judgment just cited ; and it has also this particular importance in our present inquiry, that it rules that this statute of William applies to that class of cases, before

referred to, in which, at common law, the remedy is concurrent, by an action *ex contractu* or *ex delicto*.

But I think the observation and decision of the court in the case of *Erskine* v. *Adeane, L. R.*, 8 *Ch. Ap.* 756, are more to our present purpose. There a claim was made by a land owner against the executors of a deceased tenant for life, for injury to his cattle by reason of the negligence of the deceased with respect to certain yew trees, in providing insufficient fences, and for throwing the cuttings on the plaintiff's land. The cattle in question were poisoned by eating of the yew trees and the cuttings thus exposed to them. Thus it appears the gravamen of the claim was for the consequential damages resulting from the negligence of the deceased. It was held that, while it was evident such an action would not have lain at common law, it could be brought, at any time within the period limited, by the statute of William. This judgment rests upon the ground that the neglect in question, and which resulted in the loss of the cattle, was a wrong to personal property within the sense of those terms in the statute, and it is, in consequence, plain that this judgment is of much authority in our present investigation, unless a difference can be established, with respect to principle, between a loss of particular cattle by a neglect, and the loss of particular moneys from the same cause. I cannot perceive such difference.

In Massachusetts a literal interpretation has been put upon the statute of that state upon this subject, a result which may, in a degree, be accounted for by the peculiar frame of the act, which is in the nature of an enumeration of the classes of cases in which actions shall survive, and which enumeration would, upon admitted principles, tend to contract the scope of the general terms used in the subsequent part of the section.

The judgment, I think, should be for the plaintiff in the present case.