## TOTTEN v. PENNSYLVANIA RAILROAD CO.

*(Circuit Court, D. New Jersey.)*

1. NEGLIGENCE—PERSONAL INJURIES—PROVINCE OF JURY.

In an action for damages for personal injuries sustained by reason of the negligence of the defendant, a railroad company, where there was great discrepancy in the evidence, the question of whether injury was inflicted by the negligent acts charged is for the jury to determine.

2. SAME—ACCIDENT—LIABILITY FOR INJURIES.

Where it is shown that plaintiff was injured by the accident, the question whether defendant is legally responsible is a mixed question of law and fact.

3. SAME—EMPLOYER AND EMPLOYE—LIABILITY.

The master is not liable to his servant for injuries produced by his fellow-servant engaged in the same business and common employment, provided there be no negligence in the appointment of such negligent servant, or in his retention after notice of his incompetency.

4. SAME—CONTRACT OF EMPLOYE.

When an employe enters into an engagement with his employer he assumes all the risks of the service arising from the negligence of his fellow-servants engaged in the same business or common employment.

5. SAME—DUTY OF EMPLOYER.

When the business is carried on by machinery, it is the master's duty to keep the machinery in such condition as, from the nature of the business and employment, the servant has the right to expect that it would be kept, and where he fails to do so he is liable for injuries arising from his negligence.

6. SAME—DAMAGES.

In estimating the damages for personal injuries caused by negligence, the rule is that it should be such an amount as will compensate for pain and suffering, expense of physician and medicines, loss of wages if a laboring man, loss of business if engaged in business, also injury to him physically and mentally, affecting his capacity to labor or carry on business; and in considering these the jury may include not only past losses but continuing losses, where the evidence satisfies them that the injuries will continue.

*Leon Abbett,* for plaintiff.

*James B. Vredenburgh* and *Edward T. Green,* for defendant.

NIXON, D. J., *(charging jury.)* This is an action of *trespass on the case,* brought by the plaintiff against the defendant corporation to recover damages which he alleges that he sustained by reason of the negligence of the defendant. The plaintiff is a machinist by trade, and was employed in the workshop of the defendant, at Jersey City, on the first day of November, 1880, repairing a boiler. While thus occupied an engine broke through the closed doors of the shop, struck the boiler on which he was working, and inflicted upon him injuries from which he now claims to be suffering. Two questions are at once presented for consideration: (1) Has any injury in fact

been inflicted? (2) If so, was the accident one for which, under the circumstances, the defendant corporation is legally liable?

I advise you to take up this case and consider these questions separately and in order. The first is, has the plaintiff in fact suffered injury?

You have heard his statement. The burden of proving this rests upon him. He must satisfy you to a reasonable certainty that some injury has happened to him from the negligence of the defendant before you come to the question of the amount of damages. The responsibility of deciding this is upon you. I express no opinion, but ask you to weigh all the evidence and to form your opinion from its character and weight. Commence with the beginning—the time of the accident in the erecting house. Consider the testimony of the plaintiff and the other witnesses, who were cognizant of the condition of affairs then and immediately afterwards. Go with him to the hospital. Call to mind the statements of the physicians of the hospital as to their examinations and opinions.

Without dwelling upon the details of the evidence on this point, let me invite your attention to two notable events, which, as it seems to me, have an important bearing. I allude to the two examinations of the plaintiff—the first, by Dr. Duryea, on the sixteenth of March, 1881, and the other, by Drs. Watson and Van Vorst, on the fourth of April—within three weeks of each other.

Dr. Duryea's first attention to the case was on the sixteenth of March. You heard his statement of the symptoms as he examined them. He fully describes the objective symptoms which he then found.

Drs. Watson and Van Vorst had been more or less familiar with the case from the start. You will recollect what their testimony was as to the plaintiff's condition on the fourth of April.

There is a great discrepancy—I have almost said a vital contradiction of the evidence of these physicians, which it is your duty to reconcile, if you can, and if you cannot, then to determine which you will believe. In determining this, if you have to determine it, it is proper that you should remember the relations which Watson bore to the company, and how far that relationship affected the truth of his testimony. But, at the same time, you should also recollect the relation of physician and patient which Duryea had with the plaintiff, and how far his judgment or candor was affected by it. So far as it appears, Dr. Van Vorst had no special connection with either

of the parties, except so far as he had the relation of an assistant to Dr. Watson in the hospital of St. Francis.

After a patient review of all the evidence, if you conclude that the injuries of which the plaintiff complains have not been caused by the accident on the first of November, your verdict must be for the defendant. We must not allow our judgment or sense of justice to be perverted by our sympathies and feelings because the plaintiff happens to be a poor man and the defendant is a large corporation. The law recognizes no difference in regard to parties. All stand upon the same level in a court of law, and the court and jury must be careful to mete out exact justice to all, without regard to mere external condition and circumstances.

If you decide that the injuries, real or alleged, of the plaintiff did not flow from the accident, your verdict will be not guilty, and you need go no further, as the case ends here. But if you reach the conclusion that the plaintiff was injured by the accident, you will proceed to inquire whether the defendant is legally responsible. This is a mixed question of law and fact. So far as the law is concerned, the court is under the responsibility of stating it to you, and you must accept it as stated; and, as to the facts, you must decide them under and according to the evidence in the case.

You have heard much said here about the responsibility of a common employer for injuries happening to one employe from the negligence and carelessness of a co-employe. The general rule on this subject undoubtedly is that the master is not liable to his servant for injuries produced by the negligence of his fellow-servant, engaged in the same business and common employment, provided there be no negligence in the appointment of such negligent servant, or in his retention after notice of his incompetency; or, to put the rule in words which will be clearly intelligible to the jury, if Totten has received injuries from the negligence and carelessness of Dougherty, at a time when Totten and Dougherty were engaged in a common employment, the railroad company is no more responsible, and Totten has no more claim against the company than he would have against Dougherty if the injury had been the result solely of the negligence of the company. And this for obvious reasons. An employer does not guaranty his servants against accidents.

One of the considerations which enter into the compensation of servants is their exposure to the risks of the service. As a rule, the greater the risk in this respect the larger the compensa-

tion demanded and received. Without regard to the printed rules which the defendant company kept exposed to the view of workmen on the walls of the workshop, which, in their reference to this case, was a notice that they were not to be held responsible for accidents, the plaintiff, when he engaged in the service, said, in law, to the defendant:

"I enter your employ as a machinist, and go into the erecting shop used for the repair of engines. I accept as compensation the money which you agree to pay, not only for the value of my labor, but for all the risks which I necessarily assume and expose myself to from the carelessness of my fellow servants engaged in the same business. I am aware as to how the business must be carried on. The defective engine must be brought into the shop. I see the machinery by which this is done. There is a stationary engine, with its engineer, upon a transfer table. There is a locomotive with its engineer to furnish the motive power to get the defective engines into the shop after the transfer table has brought about the necessary connection of the tracks. I know that it is usual, in repairing boilers, to remove the wheels, place the boiler under chucks, and perform the work over the track. Knowing all these facts, I enter the service and take the risks which may arise from the negligence of my fellow-servants engaged in the same business or common employment."

That is the legal interpretation of the plaintiff's language when he entered the service of the defendant.

But the question still remains, who are *fellow*-servants? They need not be in the same kind of work; they need not be in the same shop. I think the test here is, did their employment and work conduce to a common result? and that is the question for you to ask yourselves when you inquire whether the plaintiff and Dougherty and Vandewater were fellow-servants engaged in the same common business.

If you find that the business in which these three men were respectively engaged was simply carrying out proper methods and arrangements for the repair of the engines of the company, then they were fellow-servants in the same business, and the defendant company is not liable to the plaintiff, unless, in further looking into the case, you come to the conclusion that the accident did not occur from the negligence of these fellow-servants, but from defects of the machinery furnished by the company for the performance of this work, and which defects were of a character that the company was bound to notice.

The rule upon this subject is that when the business is carried on by machinery it is the master's duty to keep the machinery in such

condition as, from the nature of the business and employment, the servant had the right to expect that it would be kept. Where he fails to do this he is liable to the servant for the injuries arising from his negligence.

This inquiry has reference only to the engine No. 362, called the Modoc. I do not understand that the plaintiff claims there was any other defect. You heard the testimony upon this point. Vandewater says that the engine was all right; that the wooden plug was not used because there was anything defective about the engine, but for greater precaution against accidents when the engine was left alone; and that the accident in this case resulted from Dougherty interfering where he had no business.

If there was any testimony that there was such defect about the engine as hindered its proper working when in the hands of Vandewater, I do not recollect it. But you are the judges of that.

If you find that the plaintiff and the engineers of the two engines were engaged in common business and were co-adventurers in employments conducing to a common result, or if you find that the engine was reasonably fit for the duty that it was sent there to perform, your verdict will be for the defendant; but if you find either of these facts in favor of the plaintiff, and likewise the first question to which I adverted, as to whether the injury complained of had been in fact committed, then the only remaining matter is the question of damages.

This is a question of fact for the jury, with which the court rarely interferes. The rule is that where one is injured by another under such circumstances that the injuring party is liable for damages, he should pay such an amount as will compensate for pain and suffering, expense of physicians and medicines, loss of wages where he is a laboring man, loss of business when engaged in business, also injury to him physically and mentally, affecting his capacity to labor or carry on his business; and, in considering these, the jury have the right to include not only past losses, but for continuing losses, where the evidence satisfies them that the injuries will continue.

These observations cover the ground taken by the respective counsel in their special requests to charge, and you will please retire and consider your verdict.

The jury found a verdict in favor of the plaintiff for $2,500 damages.