93 N.J. Super. 459 (1967)
226 A.2d 186
HAROLD KERN, AS GENERAL ADMINISTRATOR AND AS ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF KATHLEEN KERN, HAROLD KERN AND LOUISE KERN, PLAINTIFFS,
v.
EDGAR KOGAN, A. FESSAS, I. HAROLD SMELSON, AND ST. ELIZABETH'S HOSPITAL, A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 17, 1967.
*461 Mr. Ernest N. Giannone for plaintiffs (Messrs. Giannone, Cartier & Capone, attorneys).
Mr. Leo Kaplowitz for defendant Edgar Kogan (Messrs. Kapplowitz & Wise, attorneys).
Mr. John B. Stone, Jr. for defendant Edgar Kogan (Messrs. Ryan, Saros, Davis & Stone, attorneys).
Miss Joan B. Sherman for defendant A. Fessas (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
Mr. Eugene M. Purcell for defendant I. Harold Smelson (Messrs. Stevens & Mathias, attorneys).
*462 Mr. Ervin E. Field for defendant St. Elizabeth's Hospital.
FELLER, J.S.C.
This matter is before the court as a result of an action brought by Harold Kern, as general administrator and as administrator ad prosequendum of the estate of Kathleen Kern; Harold Kern and Louise Kern, individually, against Drs. Edgar Kogan, A. Fessas and I. Harold Smelson, and St. Elizabeth's Hospital.
The first count of the complaint alleges that defendants are duly licensed physicians of New Jersey, and that on or about February 26, 1964 plaintiff placed his daughter Kathleen Kern, age 13, under the care of defendant Dr. Fessas. Further, that on March 2, 1964 defendant examined and undertook to treat Kathleen up until March 8, 1964, on which date he recommended defendant Dr. Kogan to plaintiff for consultation and treatment of Kathleen, now deceased. The first count further alleges that Dr. Kogan undertook to treat decedent at St. Elizabeth's Hospital on March 9, 1964, and thereafter defendant Dr. Smelson, sharing a common duty with the other defendants, undertook to treat her. The first count also alleges that since March 9, 1964 Dr. Kogan was the physician in charge of treating Kathleen and that the other defendant physicians participated in the treatments which were administered. Further, that Drs. Kogan and Smelson negligently failed to exercise that degree of care commonly exercised by like physicians and failed to treat Kathleen properly. Further, that as a result of that negligence Kathleen suffered severe pain and agony up to and including March 18, 1964, as a result of which she died. Further, that defndant St. Elizabeth's Hospital was negligent during the period of March 9 to 19, 1964 by permitting Dr. Kogan to perform acts which were unreasonable on their face, and that the hospital, through its servants, agents or employees, failed to heed the laboratory findings and the physical and outward apparance of Kathleen during the course of the treatment, and failed to *463 take action to prevent the deterioration of decedent. Kathleen leaves surviving her, her mother and father, and this action is instituted for their benefit within two years from the date of her death. Finally, judgment is demanded against defendants.
The second count repeats all of the allegations of the first, and alleges that Kathleen suffered great pain, agony, discomfort and deterioration as a result of the negligence. Judgment is similarly demanded.
The third count of the complaint repeats all of the allegations of the first and further avers that Dr. Kogan fraudulently and deceitfully assured plaintiff that his prognosis was reasonably accurate, and concealed further facts relating to Kathleen's condition. Judgment was therefore demanded against Dr. Kogan generally, together with judgment for punitive damages.
The fourth count repeats all of the allegations of the third, and further alleges that the conscious conduct of Dr. Kogan during the course of his treatment was such that he recklessly disregarded and was completely indifferent to and unconcerned for the probable consequence of his negligence, and that his indifference was so complete that it, in essence, was willful or wanton misconduct, wherefore punitive damages were demanded against Dr. Kogan.
The fifth count alleges that plaintiffs were the natural parents of decedent; that all of the allegations of the first and second counts are repeated, and that as a result of the afore-mentioned negligence, great emotional disturbances and mental anguish were inflicted upon plaintiffs. Finally, they demanded judgment generally on the fifth count.
The sixth count repeats all of the allegations of the fifth, and of the third and fourth counts, and finally demands judgment for punitive damages against Dr. Kogan.
The motion presently before the court, as a result of the aforedescribed proceedings, is one to dismiss the third, fourth, fifth and sixth counts of plaintiffs' complaint for failure to state a cause of action. An attached affidavit of Dr. Kogan is *464 relied upon in support of this motion by defendant Dr. Kogan. The affidavit states that said defendant undertook to treat Kathleen Kern after having the said patient referred to him by defendant Dr. Fessas. Further, that said Dr. Kogan, in so treating decedent, brought to bear that degree of care, knowledge and skill that is ordinarily possessed by those of the medical profession practicing in the field of internal medicine. Further, that Dr. Kogan arranged to have decedent hospitalized at the St. Elizabeth Hospital with an admitting diagnosis of anorexia nervosa and ordered certain laboratory tests to be performed, among which was a urine analysis for sugar. Dr. Kogan further avers in his affidavit that a proper diagnosis depends upon facts available to a physician and that in this case, one very significant fact did not come to his attention, i.e., the presence of sugar in the patient's urine. Further, that the progress notes which are part of the hospital records indicate that on March 10, 1964 the information then in Dr. Kogan's possession was that the urine sugar of decedent was negative. Further, that this report was erroneous and that Dr. Kogan labored and proceeded under the belief that the urine analysis was negative. Further, that the unfortunate situation which gave rise to the alleged cause of action came about as a result of human error. Dr. Kogan further avers that during the time which he treated decedent, he was fully cognizant of his responsibilities as a physician and exercised his best judgment and skill based upon the information then at hand, and was at all times considerate, compassionate, understanding and solicitous of the welfare of his patient. Finally, Dr. Kogan avers that his conduct in the treatment of decedent was completely devoid of any suggestion that could give rise to malicious motivation, and that he is therefore not subject to liability for punitive damages.
As stated above, Dr. Kogan has moved before this court to dismiss the third, fourth, fifth and sixth counts of the complaint, for failure to state a cause of action. It is this motion which will be dealt with in the course of this opinion. It is Dr. Kogan's position that arguendo, even if liability exists *465 with respect to the main case, punitive damages cannot be awarded as a matter of law in a medical malpractice case where death intervenes, for the reason that such death gives rise only to a cause of action under the Wrongful Death Act, which by its terms precludes awarding of punitive damages. Dr. Kogan further alleges that there can be no recovery under the fifth and sixth counts of the complaint for emotional and mental anguish suffered by said parents.
Under the common law rule, personal actions did not survive to the personal representatives of a deceased person, but abated with the latter's death pending trial. The rigors of this harsh and technical rule were relaxed and ameliorated by the provisions of the Death Act, which, under the title of "An act to provide for the recovery of damages in cases where the death of a person is caused by the wrongful act, neglect or default" of another, was enacted in this State on March 3, 1848 (P.L. 1848, p. 151, Rev. 1877, p. 294). See Cammarata v. Public Service Co-Ordinated Transport, 124 N.J.L. 38 (E. & A. 1940); Prudential Insurance Co. of America v. Laval, 131 N.J. Eq. 23 (Ch. 1942). The Death Act then appeared in the Revised Statutes of 1937, under 2:47-1 et seq. and is encompassed today in N.J.S. 2A:31-1 et seq. Because it was designed to abolish the harsh and technical rule of the common law, the act was given a liberal interpretation. Cibulla v. Pennsylvania-Reading Seashore Lines, 25 N.J. Misc. 98, 50 A.2d 461 (C.P. 1946).
The Wrongful Death Act states:
The Wrongful Death Act states:
"When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances amounting in law to a crime." N.J.S. 2A:31-1 (Emphasis added)
*466 It should be noted that the controlling feature of the original act in 1848 (Rev. 1877, p. 294) was that damages were made recoverable for causing death as a compensation for the pecuniary injury sustained by the designated beneficiaries by reason of the death. See Cooper v. Shore Electric Co., 63 N.J.L. 558 (E. & A. 1899). It can therefore be seen that a cause of action for the death of another did not exist at common law, Giardini v. McAdoo, 93 N.J.L. 138 (E. & A. 1919); and that in the absence of a statutory provision, therefore, an action cannot be maintained for the wrongful death of another. Myers v. Holborn, 58 N.J.L. 193 (E. & A. 1895). The right to recover for a wrongful death, being a creature not of the common law, but of the statute (Death Act, supra), confers that right on the personal representatives of the deceased, for the sole benefit of the persons designated in the act. In such action, the quantum of damages recoverable is to be admeasured according to the said persons' pecuniary loss resulting from his death. See Cooper v. Shore Electric Co., supra; McKeering v. Pennsylvania Railroad Co., 65 N.J.L. 57 (Sup. Ct. 1900); Pisano v. B.M. & J.F. Shanley Co., 66 N.J.L. 1 (Sup. Ct. 1901); Gottlieb v. North Jersey Street Railway Co., 72 N.J.L. 480 (E. & A. 1906); Brown v. Honiss, 74 N.J.L. 501 (E. & A. 1907); Cetofonte v. Camden Coke Co., 78 N.J.L. 662 (E. & A. 1910); and Manns v. A.E. Sanford Co., 82 N.J.L. 124 (Sup. Ct. 1911).
It should finally be noted that N.J.S. 2A:31-4 sets forth the fact that the amount recovered under the Death Act shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and N.J.S. 2A:31-5 expresses the legislative intent to have the jury give such damages as they shall deem fair and just, with reference to the pecuniary injuries resulting from the death. Having established the above, by way of background, this court will now proceed to dispose of the defendant's motion to dismiss the third, fourth, fifth and sixth counts of the complaint in numerical order.

*467 I
The third count of the complaint, which is the first count which defendant seeks to have this court dismiss, reads:
"THIRD COUNT
1. Plaintiff repeats all of the allegations of the First Count as if set forth at length.
2. Defendant, Edgar Kogan, fraudulently and deceitfully assured the plaintiff that his diagnosis was correct, falsely represented and assured the plaintiff that his prognosis was reasonably accurate, and concealed further facts relating to the decedent's condition.
WHEREFORE, plaintiff demands judgment generally against the defendant, Edgar Kogan, together with judgment for punitive damages."
The fourth count of the complaint states:
"1. Plaintiff repeats all of the allegations of the Third Count as if set forth at length.
2. The conscious conduct of the defendant, Edgar Kogan, during the course of his treatment was such that he recklessly disregarded and was completely indifferent and disconcerned for the probable consequence of his negligence; further said defendant was so completely indifferent so that his conduct was that of willful or wanton misconduct.
WHEREFORE, plaintiffs demand judgment for punitive damages generally against the defendant Edgar Kogan."
Thus it can be seen that the third count of the complaint alleges that Dr. Kogan, was fraudulent, deceitful and that he falsely represented decedent's condition to plaintiff, and that he concealed certain facts related thereto. The fourth count of the complaint alleges that Dr. Kogan recklessly disregarded and was completely indifferent to the probable consequences of his negligence, so as to amount to willful or wanton misconduct. The important question for consideration, therefore, with regard to a disposition of counts three and four, is simply whether punitive damages may be claimed as alleged by plaintiffs.
There is no question but that negligence such as that which plaintiffs allege is actionable. See N.J.S. 2A:31-1. *468 It can further be seen that N.J.S. 2A:31-4 provides that any amount recovered in such a proceeding shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent. It is further important at this juncture to note that N.J.S. 2A:31-5 provides that in any action brought under this chapter, the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the persons entitled to any intestate personal property of the decedent. It has been held that this section means that damages shall be given for a deprivation of the reasonable expectancy of a pecuniary advantage which would have resulted by a continuance of the life of the deceased. See Capone v. Norton, 8 N.J. 54 (1951); McStay v. Przychocki, 7 N.J. 456 (1951); Gluckauf v. Pine Lake Beach Club, 78 N.J. Super. 8 (App. Div. 1963); Carter v. West Jersey & Seashore R.R. Co., 76 N.J.L. 602 (E. & A. 1908).
The portion of the motion with which this court is presently dealing concerns the kinds of damages which are recoverable under the Wrongful Death Act. It has been established in Gluckhauf v. Pine Lake Beach Club, Inc., supra, 78 N.J. Super., at page 21, that in determining the amount to be awarded for the death of a 15-year-old boy, the jury could consider the pecuniary loss which the mother suffered by being prospectively deprived of such contributions to her support as her son might make, but that the jury is not limited to contributions, for in determining the proper amount of damages to be awarded in an action for the death of minors, all probabilities and every reasonable expectation bearing upon pecuniary injury should be taken into account, and the jury must weigh the probabilities and to a large extent form their estimate of damages on conjectures and uncertainties. In Bohrman v. Pennsylvania R. Co., 23 N.J. Super. 399 (App. Div. 1952), which was a wrongful death action, it was held that the probable earning of a deceased child during her minority and the reasonable expectancy of contributions of a pecuniary nature which the deceased child *469 might have made after reaching majority, were proper elements to be considered in ascertaining damages to her parents. In further support of the position that compensatory damages are the only damages permitted in an action under the Wrongful Death Act, is the case of Graf v. Taggert, 43 N.J. 303 (1964), wherein it is stated that in the absence of a pecuniary loss, a cause of action under the Death Act will not lie. Furthermore, in Meehan v. Central R. Co. of N.J., 181 F. Supp. 594 (U.S.D.C. 1960), it was stated that the New Jersey wrongful death statute is essentially remedial rather than penal, and consequently a plaintiff suing thereunder is entitled to recover nothing but the pecuniary loss suffered by the next of kin as a result of the death of the decedent, and he cannot recover punitive damages. See also Graf v. Taggert, supra; Hartman v. City of Brigantine, 42 N.J. Super. 247 (App. Div. 1956), affirmed 23 N.J. 530 (1957); and Carianni v. Schwenker, 38 N.J. Super. 350 (App. Div. 1955). A reading of the cases discloses that the status of the law in New Jersey bearing upon wrongful death actions would seem to restrict all such claims to compensatory damages, and therefore, the demands for punitive damages based upon the allegations that defendant Dr. Kogan was fraudulent, deceitful and negligent, which actions resulted in the death of decedent, will not lie and thus defendant's motion with respect to these counts will be granted.

II
The remaining issue presented by defendant's motion with respect to counts three and four of the complaint deals with the "severe pain and agony" suffered by decedent from March 9, 1964 to March 18, 1964 as a result of the alleged gross negligence on the part of defendant Dr. Kogan. Although pain and suffering have long been held to be elements in the determination of damages in a personal injury action (see Holman v. Metropolitan Life Insurance Co., 121 N.J.L. 551 (E. & A. 1939); Smith v. Red Top Taxicab Corp., 111 *470 N.J.L. 439 (E. & A. 1933); Totten v. Pennsylvania R. Co., 11 F. 564 (U.S.C.C. 1882); Whelan v. New York, L.E. & W.R. Co., 38 F. 15 (U.S.C.C. 1889); Anthony v. Louisville & N.R. Co., 27 F. 724 (U.S.C.C. 1886); Goble v. Delaware, L. & W.R. Co., Fed. Cas. No. 5,488A, 3 N.J.L.J. 176 (U.S.D.C. 1880)), this court, in determining whether as a matter of law punitive damages will be allowed in the instant case, is confronted with a problem of a different nature.
At common law, for any injury to the person resulting in death, no remedy was accorded to the estate of the deceased person for these injuries, nor to those dependent upon him. This seems to have been the settled law of England prior to legislation on the subject. As a preamble to Lord Campbell's Act, enacted in England in 1846 (9 & 10 Vict., c. 93), it is recited that "whereas no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of any person." To like effect was the common law of New Jersey. See Grosso v. Delaware, L. & W. Railroad Co., 50 N.J.L. 317 (Sup. Ct. 1887), and Soden v. Trenton, etc., Traction Corp., 101 N.J.L. 393, 395 (E. & A. 1925). In the early period of the development of the common law of England, no personal right of action survived to the personal representatives. See Cooper v. Shore Electric Co., 63 N.J.L. 558 (E. & A. 1899). In 4 Edw. III, c. 7, the British Parliament gave to executors an action for "trespass done to their testator, or of the goods and chattels of the testator carried away in life." By the act of 25 Edw. III, c. 5 and the judicial interpretation of the two statutes, actions on the case and in assumpsit on simple contract were held to be permitted, but injuries to the freehold and to the person were still without redress at the hands of the personal representative. In 1846 parliament passed the Death Act in order to afford redress to those who were dependent upon people who died. This same realization of the inadequacy of the law as it existed in New Jersey led to the passage of the Wrongful Death Act in 1848. This new condition of the law *471 still left a large and obvious type of injury without redress. The acts of Edward III had remedied the inadequacy of the law so far as to permit the survival of actions for injuries to the personal property of deceased persons, but afforded no remedy for injuries to the real property or to the persons of those who had died. It was in this situation that our own act of 1855 was passed, to meet these deficiencies. This act was known as the Executors and Administrators Act and the Survivors Act. Its language is "that executors or administrators * * * may have an action for any trespass done to the person or property, real or personal, of their testator or intestate, * * * and recover their damages in like manner as their testator would have had if he was living." See Soden, supra, 101 N.J.L., at p. 396. It is, therefore, the duty of this court to "so construe the act as to suppress the mischief and advance the remedy." 1 Bl. Com. 87. There is certainly nothing in morals, in public policy or good sense to justify the continuance of a rule that grounded a man's right to recover for an injury to his person or estate, inflicted by a tortious act, on the contingency of the party injured surviving to the date of trial. See Ten Eyck v. Runk, 31 N.J.L. 428 (Sup. Ct. 1865). See also Tichenor v. Hayes, 41 N.J.L. 193 (Sup. Ct. 1879), and Cooper v. Shore Electric Co., supra.
As a result of these two acts, it should be noted that the two causes of action are separate and distinct. The death statute gives to the personal representatives a cause of action beyond that which the deceased would have had if he had survived, and based upon a different principle, a new right of action. See Cooper v. Shore Electric Co., supra. The recovery goes, not to the estate of the deceased person, but to certain designated persons or next of kin. In the recovery the executor or administrator as such has no interest; the fund is not liable to the debts of the deceased, nor is it subject to disposition by will, for the reason that the primary concern of the act of 1848 is to provide for those who may have been the dependents of the deceased. The beneficiaries named are the "widow and next of kin" and it is they and they alone who are permitted *472 recovery for their pecuniary injury resulting from such death.
A very different legal problem is presented, however, by the act of 1855, now designated as N.J.S. 2A:15-3. In this act the law contemplates compensation to the deceased person's estate. It is in the interval between injury and death only that loss can accrue to the estate, and in that alone is the personal representative interested. In this regard, the Death Act gives no participation by the widow or next of kin. The damages for personal injury and the expense of care, nursing, medical attendance, hospital and other proper charges incident to an injury as well as the loss of earnings in the life of the deceased are the loss to his estate and not to them. The controlling feature in the Death Act, however, is that damages are made recoverable as a compensation for the pecuniary injury the designated beneficiaries have sustained by reason of the death, and the pecuniary injury begins immediately on the death. It is most significant, therefore, that in this connection the limitation under the act of 1848 runs from the death, and under the act of 1855 the limitation runs from the time of the injury inflicted until death. See Cooper v. Shore Electric Co., supra, 63 N.J.L., at page 565, and Soden v. Trenton, etc., Traction Corp., supra, 101 N.J.L., at page 399.
There would seem, therefore, to be no doubt that the act of 1855 was passed as supplementary to the Death Act and to fill the gap left open in the acts of Edward III by affording complete and adequate redress to the estates of those who were injured in person or in property by injuries causing death. The conclusion to be drawn, therefore, is that the act of 1855, presently cited as N.J.S. 2A:15-3, supra, was intended to give to executors or administrators an action for any trespass done to the person or property of their testator or intestate. This act does not contradict the Death Act of 1848, presently cited as N.J.S. 2A:31-1, nor is it inconsistent with the same. Recovery may be had under each act  under the former for the loss that accrued to the estate between injury and death, and under the latter for the pecuniary *473 injury resulting from the death to the widow and next of kin. See Prudential Ins. Co. of America v. Laval, 131 N.J. Eq. 23 (Ch. 1942); Soden v. Trenton, etc., Traction Corp., supra. Under these acts, the administrator ad prosequendum is the proper party to bring a wrongful death action and the general administrator is the proper party to institute a survival action. See Kleinschmidt v. Universal Seafood Co., 201 F. Supp. 96 (D.C. 1962). When an injured person dies as a result of an accident, while he still has a cause of action for his injuries, the said cause of action for his injuries passes to his estate, while a new and separate cause of action for the wrongful death arises in favor of the beneficiaries named in the Death Act. See Kotkin v. Caprio, 65 N.J. Super 453 (App. Div. 1961). In the instant case, plaintiffs are suing as general administrators and as administrators ad prosequendum and they, therefore, are in a position to avail themselves of the remedies prescribed by the afore-discussed two statutes.
Meehan v. Central Railroad Co. of N.J., supra, however, deals with the issue of pain and suffering precisely as it is presented in this court's present consideration of the instant motion. This case involved an action under the New Jersey statutes for the wrongful death of decedent and for the conscious pain and suffering of decedent prior to his death. The court stated that the general rule in the United States is that exemplary or punitive damages for death are not recoverable under statutes modeled after Lord Campbell's Act, and in accordance with the compensatory nature of the New Jersey wrongful death statutes, the punitive damage action on the wrongful death was dismissed. See also Annotation, 94 A.L.R. 384, 386; 16 Am. Jur., Death, sec. 185, p. 124; May v. West Jersey & S.R. Co., 62 N.J.L. 67 (Sup. Ct. 1898); Odlivak v. Elliott, 82 F. Supp. 607 (D.C. Del. 1949); and Turon v. J. & L. Const. Co., 8 N.J. 543 (1952). It is interesting to note that the above is in keeping with the reasoning in Part I of this opinion which prompted this court's *474 disposition of that portion of defendant's motion which is discussed above.
The question of permitting a claim for punitive damages under N.J.S. 2A:15-3, however, presents a problem of a different nature. It has been shown supra that punitive damages will not be permitted in an action brought under the Wrongful Death Act (N.J.S. 2A:31-1 et seq.) for the reason that such act is remedial in nature, and not penal. Claims for punitive damages for the wrongful death of a decedent have consequently been barred. Such claim, however, is to be distinguished from that portion of plaintiffs' claim which seeks punitive damages for the pain and suffering of decedent prior to her death, for the reason that this separate cause of action owes its existence not to the Wrongful Death Act, but rather to the survival action statute, designated as N.J.S. 2A:15-3. In Meehan, supra, the jury awarded to plaintiff the sum of $315,000 on the cause of action for the wrongful death, and $10,000 on the cause of action for conscious pain and suffering, and to the latter item $1,000 as punitive damages was added by stipulation of the parties. The defendant filed a motion for a new trial, and the District Court held that the record disclosed that the award for wrongful death was excessive and that the total award should be reduced to $235,000. That portion of the opinion which is pertinent to the instant motion, however, states:
"There was, in my opinion, sufficient and adequate evidence to warrant punitive damages on the claim for pain and suffering. The liftspan was raised and opened at the time the train came and it would appear that the employees of the railroad employed in connection with the operation of the signalling devices made no effort to stop the train from going beyond the point of danger, and that there was, therefore, reckless and wanton conduct which brought about the pain and suffering to the decedent as well as his death. Therefore, the punitive damages of $1,000 above mentioned, are sustained. The motion to preclude such damages is denied." (At p. 626 of 181 F. Supp.: emphasis added)
*475 Nowhere do the cases in this area indicate that actions for pain and suffering brought under N.J.S. 2A:15-3 be restricted to compensatory redress, as is indicated by the cases dealing with the Wrongful Death Act. On the contrary, in addition to the afore-cited Meehan case, supra, the case of Messina v. Petroli, 11 N.J. Misc. 583, 585, 167 A. 767 (Circ. Ct. 1933), would seem to support awards of punitive damages in actions brought under N.J.S. 2A:15-3. In Messina, supra, a writ of attachment was issued in favor of the administrator ad prosequendum of deceased, in an action in tort for personal injuries suffered between the time that the tort was committed and death. The Hudson County Circuit Court granted defendant's motion to set aside the writ of attachment, stating at page 587:
"* * * a general administrator, * * * would under the Executors and Administrators act of 1855, § 4 (2 Comp. St. 1910, p. 2260) have the right to bring an action against the defendant for pain and suffering and the other losses recoverable * * *. In any event, an action for an outrageous battery committed on the decedent to recover for pain and suffering, money losses and punitive damages should be brought in the name of the general administrator and not by an administrator with limited powers as the plaintiff in this case." (Emphasis added)
It can thus be seen, therefore, that the court in Messina, supra, set aside the writ of attachment not because a claim for punitive damages cannot be maintained where malice is alleged, but merely because the action was brought by the administrator ad prosequendum under the Wrongful Death Act, and not by the general administrator under the Executors and Administrators Act. Such reasoning would at least imply that an action brought by a general administrator under N.J.S. 2A:15-3 for punitive damages for pain and suffering of a decedent prior to his death, where malice is alleged, is actionable. Admittedly, the proofs to be submitted by the parties await evaluation by the trier of fact, but this court cannot, as a matter of law, preclude the possibility of an award of punitive damages for the pain and suffering of *476 decedent. It is therefore the opinion of this court that defendant's motion to dismiss that portion of the complaint which demands punitive damages for the pain and suffering of the deceased prior to her death will be denied.

III
The fifth count of the complaint is quoted below:
"BY THE PLAINTIFF, HAROLD KERN & LOUISE KERN FIFTH COUNT
1. Plaintiffs were the natural father and mother of the decedent.
2. Plaintiffs repeat all of the allegations of the First and Second Counts as if set forth at length.
3. As a result of said negligence, great emotional disturbances and mental anguish was inflicted upon the plaintiffs.
WHEREFORE, plaintiffs, individually and/or jointly demand judgment generally on this Count together with interest and costs."
The sixth count of the complaint states:
"SIXTH COUNT
1. Plaintiffs repeat all of the allegations of the Fifth Count as if set forth at length.
2. Plaintiffs repeat all of the allegations of the Third and Fourth Counts as if set forth at length.
WHEREFORE, Plaintiffs, individually and/or jointly demand judgment for punitive damages against the defendant, Edgar Kogan, together with interest and costs on this Count."
As can be seen from the fifth and sixth counts of the complaint, it is plaintiffs' contention that the parents of a decedent have a separate cause of action for the mental anguish and emotional disturbance caused them, where the injury is to their child; where there has been no physical contact to the said parents; where the said parents have not been placed in imminent danger of harm or peril; and where the injury is alleged to have been brought about by the negligence and willful or wanton conduct of the defendant. With this the court cannot agree.
This court is aware that the law has evolved in this State from its position that no recovery could be had solely for *477 fright, unaccompanied by any personal injury (see Porter v. Delaware, L. & W.R. Co., 73 N.J.L. 405 (Sup. Ct. 1906); Fleming v. Lobel, 59 A. 28 (Sup. Ct. 1904); Ward v. West Jersey & S.R. Co., 65 N.J.L. 383 (Sup. Ct. 1900)), to its present position, permitting recovery where the negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in injury or sickness. In such case, the injured person may recover if such injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright, with the added proviso, however, that if such fright did not cause substantial bodily injury or sickness, it was to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability. See Falzone v. Busch, 45 N.J. 559 (1965). This doctrine, however, is not capable of limitless expansion, and should not be extended to bring about inequitable results.
A reluctance on the part of the courts of this State to unreasonably extend the Falzone doctrine is evidenced by the decision of the New Jersey Supreme Court in the case of Caputzal v. Lindsay Co., 48 N.J. 69 (1966). In Caputzal, supra, the court reasoned that even if a water softener manufactured, sold and installed by defendants was defective, causing a rusty discoloration in the water coming out of plaintiff's faucet, plaintiff had no cause of action. The court held that the heart attack allegedly brought on by fright at the sight of brownish water coming from his bathroom faucet shortly after plaintiff had drunk coffee made from water drawn from his kitchen faucet, was an extraordinary occurrence, not reasonably to be expected in a normal person, but rather that it constituted an unusual reaction by plaintiff, and plaintiff could not recover for the heart attack from defendants. In the instant case, plaintiffs, as parents of the deceased, are alleging that defendant's negligence caused them "great emotional disturbances and mental anguish." The reasoning in the Caputzal case, supra, would lead this court to conclude *478 that where a plaintiff, alleging fear of imminent danger and bodily harm is denied recovery, then a fortiori, one who has made no such allegation of fear of imminent danger or bodily harm, must similarly be denied recovery. The court in the Caputzal case, supra, termed plaintiff's heart attack as a "highly extraordinary consequence" and adjudged as a matter of law that defendant would not be liable for the negligent defect. It would seem that plaintiff had a stronger argument in Caputzal, supra, than do plaintiffs in the instant case.
Furthermore, in Clough v. Steen, 3 Cal. App.2d 392, 39 P.2d 889 (D. Ct. App. 1934), the court reversed a judgment allowing damages for grief and shock caused by the death of a minor child. The court stated at page 890 as follows:
"It is well settled that, in an action for wrongful death, the recovery is limited to the pecuniary loss, and the grief of the survivor may not form the basis of an award. * * * no case nor rule of law has been brought to our attention which would support a recovery by plaintiff for the shock and grief, or injury consequent thereto, growing out of the knowledge of the death of her child. In the absence of such a right at common law or by statute, the plaintiff's recovery cannot be upheld." (Emphasis added)
Also in accord therewith are: Kelly v. Fretz, 19 Cal. App.2d 356, 65 P.2d 914 (D. Ct. App. 1937); Zeller v. Reid, 38 Cal. App.2d 622, 101 P.2d 730 (D. Ct. App. 1940); Kalleg v. Fassio, 125 Cal. App. 96, 13 P.2d 763 (D. Ct. App. 1932). Also in accord with the foregoing California decisions is the case of Preece v. Baur, 143 F. Supp. 804 (U.S.D.C. 1956), holding that under Utah law a parent cannot recover for mental distress or anxiety concerning his child when such child has been imperiled by the negligence of a third party.
For the above reasons, defendant's motion to dismiss counts five and six of the complaint will be granted.
Orders appropriate in form shall be submitted pursuant to R.R. 4:55-1.